## People's State Bank v. Hill, et al.

(Decided June 2, 1925.)

### Appeal from Franklin Circuit Court.

1. Banks and Banking—Bank Not Liable for Misrepresentation of Cashier Not in Scope of His Authority.—Suppression of fact by cashier of bank to prospective purchaser of stock in butter company that such company was indebted to bank by an overdraft of $2,900.00 was not within apparent scope of his authority from bank, and hence it was not liable therefor, where seller, in selling stock, was selling his individual property, and there was no process by which bank could apply what he might receive under deal to payment of butter company's overdraft; it being immaterial that after deal was consummated seller turned greater part of money received for such stock back to company and it was deposited to its credit in bank, reducing overdraft by that amount.

2. Principal and Surety—Surety Held Not Released from Liability on Note by Misrepresentations of Payee's Cashier.—Surety held not released from liability on note because payee's cashier represented to him that money was being borrowed for a butter company, when in fact it was used to pay butter company's overdraft to payee, where surety was actively connected with business management of butter company, owned more than one-third of its outstanding stock, and had been for nearly two months acting as its secretary and treasurer, and was borrowing money in his own name for such company.

3. Guaranty—Principal and Surety—Surety or Guarantor Released, if Induced to Enter Contract by Fraudulent Misrepresentations of Material Facts by Creditors.—If a creditor induces a surety or guarantor to enter into contract of suretyship or guaranty by any fraudulent concealment or misrepresentations of material facts, surety or guarantor will be released.

4. Principal and Surety—Surety on Note Released from Liability by Misrepresentations of Payee's Cashier.—Surety on note released from liability thereon by representations of payee's cashier that money borrowed would be used to purchase additional supplies for a butter company when he then knew that money being borrowed would not be used for that purpose but would be applied to butter company's overdraft to payee; such misrepresentations being of a material fact.

JOHN D. CARROLL and THOMAS B. McGREGOR for appellant.

O'REAR, FOWLER & WALLACE for appellees.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—
Reversing in part and affirming in part.

Appellant, People's State Bank, sued appellees, Smiley Hill and A. L. Manford and one Sam Reid, to recover $2,000.00, the amount of a note they had executed and delivered to it, subject to a credit of $320.00. No defense was made by Reid and he has been eliminated. Manford defended, claiming to have signed the note as surety and to have been induced to do so by the fraud of appellant and its agents. Hill denied his liability for the amount of the note upon the same ground as did Manford, and in addition, by way of counterclaim, sought to recover from appellant $1,800.00, with interest, for the fraud of appellants, through its agents, in inducing him to purchase 18 shares of stock in the Frankfort Butter Company, a corporation, at that price. The pleadings properly made the issue, and, upon the trial of the case, the court, by peremptory instruction, directed the jury to find for appellee, Manford, releasing him from liability for having signed the note sued on, and to find for appellee, Hill, against appellant on his $1,800.00 counterclaim against it; and on the question of Hill's liability for having signed the $2,000.00 note submitted certain questions to the jury. Under those instructions the jury released Manford and Hill from liability for having signed the $2,000.00 note and found for Hill on his counterclaim. Judgment was thereupon entered, and ap-

pellant's motion and grounds for a new trial were over-ruled and it has appealed.

We will first dispose of the controversy between appellant and appellee Hill. Two distinct questions are in issue between them, and as it arose first in point of time we will first dispose of the question raised by his counter-claim. He pleaded that early· in October, 1920, the Frankfort Butter Company, a corporation, which was doing its banking business with appellant, People's State Bank, had become insolvent and was indebted to the bank on account of a note in the sum of $1,000.00, and on account of an overdraft in the sum of $2,900.00; that appellant, through its cashier, George Halmhuber, and Sam Reid, who owned a large majority of the outstanding stock of the insolvent butter company, conspired to sell him 18 shares of its stock and consummated the conspiracy by misrepresenting to him its' condition and concealing the fact from him that it was indebted in the large sums owing by it; and especially with reference to appellant, that, through its cashier, it represented to him that the butter company was indebted to it only in the sum of $1,000.00, as evidenced by note, and withheld from him the fact that it was indebted to it on account of an overdraft to the amount of $2,900.00. He pleaded that he was induced by these false representations to purchase the stock and did so, paying therefor the par value thereof, $1,800.00. On account of appellant's participation in the alleged fraud he sought to recover that sum of it. The issue was properly made, and on that branch of the case the following facts appear: There were at the time 49 shares of the Frankfort Butter Company's stock of the par value of $100.00 each outstanding. Sam Reid owned and held 36 shares. Negotiations were opened between Sam Reid and appellee, Smiley Hill, for a sale to him of 18 of Sam Reid's shares of that stock. In negotiating the deal Hill was assisted by his father and father-in-law, the appellee, A. L. Manford. The negotiations were in progress several days, during which time Hill and his father and father-in-law examined the plant and assets of the butter company and had access to all of its books. Pending the negotiations Reid appears to have made various representations as to the condition of the corporation, stock in which he was trying to sell to Hill, and, among other things, represented that it owed to appellant bank only $1,000.00. It was suggested by appellee Hill's father that the amount of the indebtedness at the

bank be ascertained by inquiry there. Appellee Manford proceeded to the bank and inquired of its cashier, Halmhuber, as to the indebtedness of the butter company. In response he was informed that it owed the bank a note of $1,000.00 and did not disclose the fact that its account was then overdrawn $2,900.00. Manford further testified that Halmhuber said that the butter company had on hand 10,000 pounds of butter and that he regarded it as a good business, and gave it as his opinion that they should hold the butter for an advance in price, and stated that he would be glad for Manford's son-in-law to go into the business. There is very little conflict in the testimony as to what occurred between Halmhuber and Manford on that occasion, and the foregoing is the substance of it. In paying for the stock he purchased from Reid Hill paid $900.00 in cash and sold him a half interest in a Reo truck, rated as being worth as a whole $1,800.00. Reid and Hill owned the truck jointly and from then on it was used by the butter company, rental for its use being paid to Reid and Hill. The day after the deal was closed deposits were made to the credit of the butter company in appellant bank aggregating something over $1,600.00, and it appears that the larger part, if not all, of the $900.00, received by Reid in cash for the stock he sold Hill, was included in the deposit. Under that state of facts the trial court peremptorily instructed the jury to find for appellee Hill on his counterclaim the full $1,800.00 paid by him to Reid for stock in the butter company. There might have been some reason for that instruction if Hill had been purchasing treasury stock in the butter company. There might be some foundation if that had been true, for holding that in suppressing the fact that the butter company was indebted to the bank by overdraft to the amount of $2,900.00 Halmhuber was acting within the apparent scope of his authority as an officer and agent of the bank. If Hill had been buying treasury stock appellant's cashier might be held as acting for it to have anticipated that by the sale of treasury stock in the butter company the proceeds of the sale might be applied in settlement of the overdraft indebtedness, and thereby render appellant liable for the fraud, if any, in suppressing the truth as acting within the apparent scope of his authority. However, since Reid was selling Hill shares of stock owned by him in the butter company it was his individual property and there was no process by which

appellant could apply what Reid might receive under the deal to the payment of the butter company's overdraft. Under that state of case it can not be held that, if Halmhuber, who happened to be appellant's cashier, made any false representations as to the condition and assets of the butter company, or fraudulently concealed its indebtedness, he was acting for or within the apparent scope of his authority from appellant bank in so doing. The fact that after the deal was consummated Reid actually turned the greater part, if not all, of the money he received for his individual stock back to the corporation and it was deposited to its credit in appellant bank, reducing the overdraft that much, can by no means be said to have injured appellee Hill. The corporation, whose stock he had purchased, received the benefit of the $900.00 cash he paid, although, under the facts, it was not entitled to it, because it belonged to Sam Reid. Under the facts of this case, on the issue made as to appellee Hill's counterclaim, instead of peremptorily instructing the jury to find for Hill, the trial court should have peremptorily instructed the jury to find for appellant bank.

Again, appellee Hill sought to be relieved of liability for having signed the $2,000.00 note sued on herein, upon the ground that he was only a surety on the note and that appellant bank, through its cashier, fraudulently misrepresented to him the purpose for which the money being borrowed would be used. The note was executed December 10, 1920. It appears that from his purchase of 18 shares of the butter company's stock from Reid, October 22, 1920, until the note was executed, appellee Hill took an active part in the management of the business of that company. A number of checks filed in the record are signed "Frankfort Butter Company, by Smiley Hill, secretary and treasurer." Hill contends that on December 10, 1920, when he signed the note, he did not know that the company was overdrawn at the bank to the amount of $2,200.00; and that he should be relieved of liability on the note because, before he signed it, appellant bank, acting through its cashier, Halmhuber, represented to him that he and Reid were borrowing that money for the butter company to use in buying more cream and making more butter, and that he was led to sign the note by that representation of appellant's cashier. Because then when the note was discounted its proceeds were used to pay the overdraft he seeks to be relieved of liability. The court is not impressed that the

time has come when one who has had active connection with the business management of a corporation, who owns more than one-third of its outstanding stock, who for nearly two months had been acting as its secretary and treasurer, and who is borrowing money in his own name for the corporation, can be entitled to be relieved of all obligation for having signed a note to obtain the money, upon the theory that he was deceived by an officer of the bank from which the money was borrowed as to the purpose for which it was borrowed. We deem that sufficient to be said on this branch of the case, and, instead of submitting an issue of fact on this branch of the case to the jury, the trial court should have peremptorily instructed the jury to find for appellant bank against appellee Hill on the note sued on.

The other case involved upon this appeal presents a more difficult question. The $2,000.00 note sued on herein was signed by appellee, A. L. Manford, as surety. That money was borrowed for the Frankfort Butter Company and the proceeds of the note when discounted appear to have been used to apply on an overdraft owing by it to appellant bank. Appellee Manford testified that he would not be induced to sign the note by being urged to do so by Sam Reid and appellant Hill, but that before he consented to sign it he went to appellant bank to investigate and discussed that matter with its cashier, Halmhuber. He testified that Halmhuber, in response to his inquiry told him that the $1,000.00 note owing by the butter company had not been paid, but suppressed from him the fact that its account was then overdrawn $2,200.00, and represented to him that the butter company was borrowing the money to purchase cream and supplies to make more butter and in order to hold the butter on hand for an advance in price. He testified that he relied upon these representations and was induced by them to sign the note. Halmhuber, while testifying, admitted that he did not disclose to Manford when he signed the note that the butter company's account was overdrawn to the extent of $2,200.00, and, although by his attorney given the opportunity to do so, he evaded the question and did not deny that while talking to Manford he represented to him before he signed the note that the money was being borrowed to enable the butter company to purchase additional cream so as to continue in operation while holding the butter on hand for an advance in price.

It is a well established rule of law that if a creditor induces a surety or guarantor to enter into the contract of suretyship or guaranty by any fraudulent concealment or misrepresentation of material facts that the surety or guarantor will be released. The cases sustaining that well establishd general rule, including a number from Kentucky, may be found in a case note appended to Fassnacht v. Emsing Gagen Company, 63 A. S. R. 320. The rule is written in these words in 32 Cyc., at page 59: .

"False or fraudulent statements made to a surety at the time of the execution of his contract, or during the negotiations leading up to it, is sufficient ground for his annulling it, although it may be binding on the principal. So, too, if a surety acts under duress, he will not be bound on his contract.

"Very little said which ought not to have been said, and very little omitted which ought to have been said, and except for which the relation might not have been entered into, will suffice to avoid the contract; although it is not material that the surety would have executed the contract anyway if he had known the true facts."

From the facts of this case, viewed in the light of the principles above, it is discerned that Manford was induced to sign the note as surety by the representation of Halmhuber, one of the executive officers of appellant bank, the payee of the note, that the money being borrowed would be used by his principal to purchase additional supplies of cream so that the butter company could continue in operation while holding the butter on hand for an advance in price. Appellant's agent did not deny having made that representation. The facts are that he then knew that the money being borrowed would not be used for that purpose, but would be applied upon the butter company overdraft. Although the surety inquired about the indebtedness of the butter company, the payee of the note, through the agent acting for it, did not disclose the fact that an overdraft that would consume all of the money then being borrowed then existed. Where the payee in a note represents to the proposed surety the purpose for which money is to be used and then applies it to another purpose, it has uniformly been held to be such a variation of the conditions under which the contract of suretyship was entered into as to release the surety. It can not be held that if Manford had known

that the overdraft existed and that the money was being borrowed to apply on it he would have consented to become surety on the note anyhow. Appellant's agent did not disclose the existence of the overdraft to him and led him to believe that the money being borrowed would be used for another purpose. Under those facts the surety had the right to assume that by purchasing additional cream with the money being borrowed from which an additional supply of butter would be accumulated by the butter company whose debt he was securing, it would thereby have that much additional assets in its hands to stand between him and loss. The misrepresentation to the surety as to the use to which the money being borrowed would be put, under the facts of this case, can but be held to be misrepresentation of material facts. There being no controversy in the testimony on this question, the trial court properly peremptorily instructed the jury to find for appellant Manford.

For the foregoing reasons the judgment entered herein as to appellee Manford is affirmed; and the judgment entered as to appellee Hill is reversed and remanded for further proceedings consistent with this opinion.