### MOORE, OWEN, THOMAS & COMPANY, Plaintiff,

v.

### L. Coleman COFFEY and Robert Bruce Coffey, Defendants.

and

### L. Coleman COFFEY and Robert Bruce Coffey, Plaintiffs–Appellees,

v.

### Thomas O. MOORE, Defendant–Appellant.

No. 92–5314.

United States Court of Appeals, Sixth Circuit.

Argued March 25, 1993.

Decided April 30, 1993.

Christopher M. Hill (argued and briefed), William D. Kirkland, McBrayer, McGinnis, Leslie & Kirkland, Frankfort, KY, for L. Coleman Coffey and Robert Bruce Coffey.

Leslie Rosenbaum (argued and briefed), Rosenbaum & Rosenbaum, Lexington, KY, for Thomas O. Moore.

Before: KENNEDY and MILBURN, Circuit Judges; and KRUPANSKY, Senior Circuit Judge.

KENNEDY, Circuit Judge.

This action arises out of an agreement between Moore, Owen, Thomas & Company ("MOT") and L. Coleman Coffey and his son, Robert Bruce Coffey ("Coffeys"), for the purchase and sale of a marina and houseboat rental business. MOT executed a promissory note in payment for the rental company, and MOT's owner, Thomas O. Moore ("Moore"), offered his personal guaranty. Moore now appeals the order of the District Court granting summary judgment in favor of the Coffeys and holding Moore liable as personal guarantor of the note. Moore argues that the District Court erred in granting the Coffeys' motion for summary judgment because: (1) material issues of fact exist regarding whether the Coffeys fraudulently induced Moore to enter the guaranty agreement; and (2) Moore's "obligation" on the guaranty[1] cannot be determined without first determining MOT's obligation to the Coffeys on the underlying purchase and sale agreement. Because we find genuine issues of material fact still exist, we reverse.

I.

The facts surrounding the commercial transaction at issue are set out in depth in the District Court's Findings of Fact and Conclusions of Law. *Moore, Owen, Thomas & Co. v. Coffey,* Civil Action No. 87–64 (E.D.Ky.1990). The following summarizes the pertinent facts.

In early November 1985, Moore, who conducted his business through a company he owned and controlled, MOT, began negotiations with the Coffeys for the acquisition of the Coffeys' family-owned marina and houseboat rental operation, known as Lake Cumberland State Dock Incorporated (LCSDI). The business, located in Lake Cumberland State Park, Kentucky, possessed a large inventory, including the largest houseboat fleet in the Eastern United States, several autos and trucks, and marina equipment. The houseboats were owned by a partnership, Vacation Cruises, of which the Coffeys were the partners. Vacation Cruises leased the houseboats to LCSDI, which used them in

1. Moore's guaranty is found at the end of a promissory note for five million dollars ($5,000,-000). The entire text of the guaranty reads: "Thomas O. Moore hereby personally guarantees the obligation of Maker's debt to Payee."

the boat rental business. The remaining assets were owned by LCSDI.[2]

On December 11, 1985, the parties met to discuss the terms of a sale and agreed that the Coffeys would sell all of the stock of LCSDI to MOT. The parties further agreed upon a purchase price of five million dollars ($5,000,000). MOT was to execute a promissory note for $5,000,000 to be paid on an installment basis. To help induce the Coffeys to finance the purchase price, Moore "personally guarantee[d] the obligation of [MOT's] debt to [the Coffeys]." MOT's $5,000,000 note, Moore's guaranty, and other documents were executed at a closing on December 31, 1985. The Agreement for Purchase and Sale of Shares consisted of the following essential terms:

The agreement was for the purchase by MOT of all outstanding shares of LCSDI; The purchase price was $5 million; The first payment, a check in the amount of $200,000, was to be given to the Coffeys at closing . . .; The purchaser, at closing, was also to deliver its note in the amount of $800,000 due on March 30, 1986; MOT was also to assume certain indebtedness listed on a "Schedule A" . . .; The balance of the $5 million purchase price was to be paid in accordance with a promissory note to be delivered by MOT at closing . . .; The Coffeys were to have contributed, prior to closing, the Vacation Cruises houseboats to LCSDI's capital so that, by closing, the Vacation Cruises houseboats would make up part of the assets of the corporation.

Subsequent to the closing, the parties disputed whether the debts of the marina business were to be assumed and paid by MOT or whether they were to be paid by the Coffeys. In the fall of 1986, MOT filed suit seeking a declaration as to the assumption of debt issue and a set-off against the purchase price for alleged misrepresentations by the Coffeys. The Coffeys counterclaimed against MOT, seeking judgment for the un- paid balance of the note and a declaration on the assumption of debt issue. Simultaneously with their Answer and Counterclaim, the Coffeys sued Moore in state court to enforce his guaranty. Moore removed the case to federal court where it was consolidated with MOT's action. Moore's answer asserts several affirmative defenses and claims entitlement to any and all rights, claims, and defenses available to MOT.

On January 31, 1990 (after bifurcating the issue of which party was responsible for the assumption of debt from the other issues in the litigation), the District Court concluded, as a matter of law, that not only had MOT agreed to pay $5,000,000 for the business, but also "MOT agreed to assume the indebtedness stated in the December 20, 1985 letter [$1.213 million] and is not entitled to a credit or offset against the purchase price owed to the Coffeys for any debts so assumed or paid." Shortly thereafter, on April 11, 1990, the Coffeys moved for partial summary judgment on their counterclaim against MOT and on their complaint against Moore, seeking entry of a money judgment on MOT's note and Moore's guaranty.

The District Court set the Coffeys' motion to be heard on May 31, 1990. Due to pending settlement negotiations, Moore and MOT were subsequently granted two extensions and given until June 6, 1990 to respond to the Coffeys' motion. On June 11, 1990, the parties told the District Court the case had been settled, but this settlement agreement eventually fell through. The Court then set another date, December 21, 1990, to hear the pending summary judgment motion. On December 20, 1990, the day before this scheduled hearing, MOT filed for Chapter 11 Bankruptcy relief.[3] After recognizing that it was prohibited by the automatic stay from further proceeding against MOT, the District Court granted Moore another extension (un-

---

**2.** LCSDI was owned by the Coffeys in equal shares.

**3.** After this filing, Moore filed a motion with the Bankruptcy Court to enjoin the Coffeys from proceeding against him in the Eastern District of Kentucky. The Bankruptcy Court partially granted Moore's motion. The court enjoined the

Coffeys from seeking to collect upon any judgment which the District Court might enter, but specifically permitted the Coffeys to continue to pursue entry of a judgment against Moore.

Additionally, this Court granted MOT's motion to stay the proceedings against it pending the outcome of its bankruptcy.

til January 7, 1991) in which to respond to the Coffeys' summary judgment motion.

On June 7, 1991, the District Court granted Moore another extension, until June 25, 1991, to file a response. However, on June 10, 1991, the court set aside the order extending Moore's time and, after finding MOT in default on the terms of the promissory note, entered judgment against Moore as guarantor for approximately $5.5 million dollars. Then, on August 22, 1991, after receiving a motion from Moore, the District Court vacated this judgment as having been "prematurely entered." Moore was given ten (10) more days to file a response.

Finally, on September 6, 1991, Moore filed a response to the Coffeys' summary judgment motion. In this response, Moore pointed out that the only issue adjudicated to date was whether MOT agreed to assume the business' debt; that his liability under the guaranty could not be determined until MOT's "obligation" was determined; and that if MOT was fraudulently induced to enter the purchase and sale agreement, or if Moore was fraudulently induced to enter the guaranty, then Moore had no obligation. The Coffeys filed their reply brief on September 20, 1991. Then, on October 10, 1991, Moore filed his affidavit in opposition to the Coffeys' motion for summary judgment. In this affidavit, Moore claims that during the negotiations for the sale of the marina business, the Coffeys made the following material misrepresentations to Moore in order to induce him to sign the guaranty agreement:

(a) The Coffeys represented that they had obtained or could easily obtain all necessary approvals from local, state, and federal authorities for the expansion of the marina business;

(b) The Coffeys displayed materials and supplies to Moore and represented that they were purchased for an expansion of the marina business to commence in the Spring of 1986;

(c) The Coffeys represented that an agreement was "all but done" by which the Commonwealth of Kentucky Department of Parks would reduce and stabilize the fees paid by the owner of the marina business to the Commonwealth of Kentucky;

(d) The Coffeys represented that subsequent to the purchase of the marina business, the purchaser could easily obtain an extension of the lease and license with the Commonwealth, which instruments were necessary to the operation of the marina business;

(e) The Coffeys represented that they had disclosed to Moore all liabilities of the corporation; and

(f) The Coffeys gave Moore certain financial statements which they represented were prepared in accord with generally accepted accounting principles and which statements were represented to accurately state the operating income, assets and liabilities of the corporation.

Moore goes on to claim that he relied upon these representations, that they were false, and that had Moore known they were false, he would not have signed the guaranty agreement.

The day after Moore filed his affidavit, the District Court entered summary judgment against him. The District Court found that "[t]here can be no dispute that MOTC has failed to perform; therefore, the Coffeys may properly look to MOTC's guarantor, Thomas O. Moore, to perform the obligations that MOTC failed to honor." The court also found no merit to Moore's claim that he was fraudulently induced to enter into the guaranty since Moore's attorney was an integral part of the negotiations and Moore had proffered no evidence to support his fraud defense. Again, the court entered judgment against Moore, as guarantor, in the amount of $5,400,225 plus interest.

On October 21, 1991, Moore filed a Motion to Modify Judgment in which he contended that the District Court overlooked the factual issues raised in the affidavit. The District Court denied the motion after finding that Moore's affidavit was untimely and that the statements attempting to establish a fraud claim were "against the weight of the evidence adduced at the bench trial."[4] This timely appeal followed.

---

**4.** In its order and judgment denying Moore's motion to alter the October 11, 1991 judgment,

## II.

This Court reviews a District Court's grant of summary judgment *de novo,* making all reasonable inferences in favor of the non-moving party. *EEOC v. University of Detroit,* 904 F.2d 331, 334 (6th Cir.1990). Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. Further, "where the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, he must show in opposition to the motion for summary judgment that he can produce evidence which, if believed, will meet the higher standard." *White v. Turfway Park Racing Ass'n,* 909 F.2d 941, 944 (6th Cir.1990) (citing *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989)).

Moore contends that material issues of fact exist (as established by his affidavit and deposition testimony) regarding whether the Coffeys fraudulently induced him to enter the guaranty agreement. Under Kentucky law, which governs this diversity action, the party asserting the fraud has the burden of establishing, by clear and convincing evidence, the following six elements: (1) a material misrepresentation; (2) which is false; (3) which was known to be false, or made recklessly; (4) made with inducement to be acted upon; (5) which is acted upon in reliance thereon; and (6) causes injury. *Compressed Gas Corp. v. United States Steel Corp.,* 857 F.2d 346, 349–50 (6th Cir.1988), *cert. denied,* 490 U.S. 1006, 109 S.Ct. 1641, 104 L.Ed.2d 156 (1989) (citing *Wahba v. Don Corlett Motors, Inc.,* 573 S.W.2d 357, 359 (Ky.Ct.App.1978)). "Kentucky law also recognizes a presumption of innocence and honesty against fraud claims." *Id.* (citations omitted). On appeal, Moore focuses on several alleged misrepresentations that he claims fraudulently induced him to sign the guaranty and which create fact issues for a jury. These representations are:

(1) The purchase and sale agreement, paragraph 5(e), provides that financial statements of November 30, 1985, incorporated into the agreement as Schedule B and prepared by accountant Dudley Shyrock, "are complete and correct and fairly represent the financial condition of the Corporation as of the date thereof and ... such statements have been prepared in conformity with generally accepted accounting principles...." However, accountant Shyrock testified that the same financial statement overstated the assets of the corporation in the amount of $300,000.

(2) The purchase and sale agreement, paragraph 5(k), states that the culmination of the transactions provided for shall not result in a default under or cancellation or termination of any continuing agreements, contracts, etc. According to Moore, the Coffeys stated during the negotiations for the sale of the marina business that they intended to contribute the Vacation Cruises houseboats to the capital of LCSDI. Several banks had financed the (Coffeys') purchase of the houseboats and these banks all held security interests in the houseboats. Following the sale, the banks did, in fact, declare that the transfer of the ownership of the houseboats, from Vacation Cruises to MOT, constituted a default under the security agreements.

(3) The alleged misrepresentations specifically set forth in Moore's affidavit.

___

the District Court stated that the "Judgment of October 11, 1991 is a FINAL JUDGMENT on the issue of Thomas O. Moore's liability as a personal guarantor of the note executed on December 31, 1985, by [MOT]."

## A.

The first issue the Court must address is whether Moore waived his fraud defense by failing to plead it as an affirmative defense as required by Fed.R.Civ.P. 8(c).[5] Moore contends that fraud was adequately pled because MOT, in its amended complaint, specifically raised the fraud issue; and Moore, answering the Coffeys' complaint, explicitly claimed entitlement to all "rights, claims, and defenses available to [MOT]." MOT's fraud claim, however, is distinct from Moore's fraud claim. MOT alleged (in its complaint) that the Coffeys made several false misrepresentations which induced it to enter the *purchase and sale agreement*. Moore claims that these same representations induced him to enter the *guaranty agreement*. Thus, MOT is claiming fraudulent inducement as to the underlying contract while Moore is claiming fraudulent inducement as to the guaranty agreement. Because these claims are different, Moore cannot "piggy-back" on MOT's claim.

It is well established, however, that failure to raise an affirmative defense by responsive pleading does not always result in waiver. *See, e.g., Charpentier v. Godsil*, 937 F.2d 859, 863 (3d Cir.1991). The Supreme Court has held that the purpose of Rule 8(c) is to give the opposing party notice of the affirmative defense and a chance to rebut it. *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 350, 91 S.Ct. 1434, 1453, 28 L.Ed.2d 788 (1971). "Thus, if a plaintiff receives notice of an affirmative defense by some means other than pleadings, 'the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice.'" *Grant v. Preferred Research, Inc.*, 885 F.2d 795, 797 (11th Cir. 1989) (quoting *Hassan v. United States Postal Serv.*, 842 F.2d 260, 263 (11th Cir.1988)). *See also Charpentier*, 937 F.2d at 864 ("It has been held that a 'defendant does not waive an affirmative defense if [h]e raised the issue at a pragmatically sufficient time and [the plaintiff] was not prejudiced in its ability to respond.'") (quoting *Lucas v. Unit-*

*ed States*, 807 F.2d 414, 418 (5th Cir.1986) (quoting *Allied Chemical Corp. v. MacKay*, 695 F.2d 854, 855–56 (5th Cir.1983)); *MacKay*, 695 F.2d at 855–56 ("Where the matter is raised in the trial court in a manner that does not result in unfair surprise ... technical failure to comply precisely with Rule 8(c) is not fatal."); *Pierce v. County of Oakland*, 652 F.2d 671 (6th Cir.1981) (affirmative defense not waived, even though not specifically pleaded, where defense clearly appears on face of the pleading and is raised in motion to dismiss). Here, Moore raised the issue of fraud in his response to the Coffeys' motion for summary judgment and in his affidavit in opposition to the Coffeys' motion. As a result, the Coffeys were aware, or at least should have been aware, that Moore intended to rely on a fraud defense. The Coffeys have not claimed that their case was prejudiced in any way by Moore's failure to plead this defense, and in fact, this is the first time the Coffeys have even raised the waiver issue.

It is troublesome, however, that Moore waited approximately seventeen (17) months from the time the Coffeys filed for summary judgment, and five years from the time the Coffeys first filed suit, to raise the defense of fraudulent inducement with respect to the guaranty agreement. Under Kentucky law, "one claiming to have been defrauded into making a contract has an option either to disaffirm the contract and seek its rescission or to affirm the contract and seek his remedy by an action for damages; he may not follow inconsistent remedies. He has but one election, and if he affirms the contract, his election is irrevocable and he condones the fraud." *Hampton v. Suter*, 330 S.W.2d 402, 406 (Ky.1959) (citations omitted). *See also Patel v. Patel*, 706 S.W.2d 3, 4 (Ky.Ct.App. 1986) (reiterating the rule that where fraud has been committed in obtaining a contract it may be taken advantage of either by an affirmance of the contract and recovery of damages on account of the fraud or by a rescission of the contract). These cases do not specify a time frame for making the election. In an analogous context, however,

5. Fed.R.Civ.P. 8(c) states in pertinent part: "In pleading to a preceding pleading, a party shall set forth affirmatively ... fraud ... and any other matter constituting an avoidance or affirmative defense."

Kentucky law makes clear that a purchaser of personal property who desires to rescind the sale for breach of warranty or fraud, must act "within a reasonable time, taking all circumstances into consideration." *See, e.g., Chaplin v. Bessire & Co.,* 361 S.W.2d 293, 294–95 (Ky.1962). Moreover, "[s]ince the question as to what is a reasonable time ... depends on the facts of a particular case, and is frequently a matter as to which different conclusions may reasonably be drawn, it is well settled that ordinarily the question is one of fact for the jury." *Id.* at 295. Thus, it is for a jury to determine whether Moore's delay in raising the defense of fraudulent inducement was reasonable.

**B.**

Assuming Moore has not waived his right to assert fraudulent inducement as a defense, the Coffeys contend that Moore has failed to raise a genuine issue of material fact because his affidavit was untimely and therefore should not be considered. It is undisputed that Moore only filed one affidavit in opposition to the Coffeys' motion for summary judgment, and that this affidavit was not filed until thirty-four days after Moore's response brief was due. The District Court has the discretion to refuse the filing of untimely affidavits. *See, e.g., Western Chance No. 2, Inc. v. KFC Corporation,* 957 F.2d 1538, 1544 (9th Cir.1992) (citing Fed. R.Civ.P. 56(e)). In the case at issue, however, the District Court chose to accept and consider the affidavit. Specifically, the District Judge stated:

> The court finds significant the fact that Moore's affidavit was not submitted with his response filed on September 6, and Moore offers no explanation as to why he waited more than one month after the filing of his response before submitting the affidavit.
>
> Consequently, the court is certainly not obligated to consider Moore's untimely and unauthorized affidavit; even so, it is well settled that decisions on the merits should not be avoided on the basis of "mere technicalities." *Foman v. Davis,* 371 U.S. 178, 181 [83 S.Ct. 227, 229, 9 L.Ed.2d 222 (1962). Therefore, the court has consid-

ered the merits of Moore's affidavit and finds it non-persuasive.

Therefore, because the affidavit was accepted into the record, this Court is free to consider it.

**C.**

In considering Moore's affidavit, we must determine whether it raises a genuine issue of material fact such that the District Court's grant of summary judgment was improper. This Court has held that "[w]here the allegation is fraud, summary judgment may be granted unless there is sufficient probative evidence produced which, if believed, would clearly and convincingly establish fraud." *White,* 909 F.2d at 946 (citing *Keck v. Wacker,* 413 F.Supp. 1377, 1383 (E.D.Ky.1976)). *See also Cloverdale Equipment Co. v. Simon Aerials, Inc.,* 869 F.2d 934, 937 (6th Cir.1989) (recognizing that "[w]hen confronted with a properly supported Motion for Summary Judgment, the party with the burden of proof at trial is obligated to provide concrete evidence supporting its claim and establishing the existence of a genuine issue of fact"). As the District Court recognized, the overriding purpose of Moore's affidavit is to establish his defense of fraudulent inducement. In paragraph 7, Moore sets forth six specific representations made by the Coffeys, which Moore alleges were fraudulent.

**1.**

On appeal, Moore focuses on paragraph (f) of his affidavit which reads, "The Coffeys gave to me certain financial statements which they represented were prepared in accord with generally accepted accounting principles and which statements were represented to accurately state the operating income, assets, and liabilities of the corporate entity, the stock of which was being purchased in order to consummate the sale." Moore then uses the Coffeys' accountant's testimony that these financial statements overstated the value of assets by $300,000, to support his claim that a material issue of fact exists as to whether he was fraudulently induced to enter into the guaranty agreement.

The Coffeys do not dispute the allegation that the assets of their marina business were

overstated. Instead, they adopt the position of the District Court that Moore has failed to carry his burden of proof on fraudulent inducement because (1) Moore and his attorney were an integral part of all negotiations and meetings leading up to the sale on December 31, 1985; (2) Moore was advised by his attorney and other attorneys specializing in tax matters regarding this proposed sale; and (3) Moore has proffered no evidence to support his fraud defense.[6]

 It is well established under Kentucky law that "equity will grant no relief to a complaining party who has means of knowledge of the truth or falsity of representations...." *McClure v. Young*, 396 S.W.2d 48 (Ky.1965) (quoting *Mayo Arcade Corp. v. Bonded Floors Co.*, 240 Ky. 212, 41 S.W.2d 1104 (1931)). The court in *Mayo* went on to explain that:

> If the means of knowledge of the alleged fraud were equally open to both parties the law will not interfere to protect the negligent.... If the truth or falsehood of the representation might have been tested by ordinary diligence and attention, it is the party's own folly if he neglected to do so, and he is remedyless.

*Mayo*, 41 S.W.2d at 1109. Moore claims that nothing in the record indicates that either Moore, his attorneys or his accountants were aware (or could have become aware) of the misrepresentation. The Coffeys claim that the financial status of the business was not misrepresented, because records were available to Moore's attorneys and accountants. Thus, there is an unresolved material issue of fact as to whether Moore could have discovered the overstatement through "ordinary diligence and attention." Even assuming he could not, it would still be the province of a jury to determine whether Moore detrimentally relied on this $300,000 overstatement in

signing the guaranty and consummating the deal.[7]

**2.**

 A more difficult question arises in connection with the other alleged misrepresentations set forth in paragraph 7 of Moore's affidavit. *See supra* at 1443–1444. The Coffeys contend that these representations (namely, 7(a), (b) (c) and (d)) are not actionable because they relate to future events. Under Kentucky law, representations as to future conduct will not support a fraud claim. *See, e.g., Schroerlucke v. Hall*, 249 S.W.2d 130, 131 (Ky.1952); *Moseley v. Owensboro Municipal Housing Commission*, 252 S.W.2d 880, 881 (Ky.1952) ("A mere expression of opinion as to a future event does not constitute fraud, at least where the subject of the opinion is not susceptible of definite knowledge."). The court in *Schroerlucke* noted, however, that there are exceptions and limitations to this general rule. *Schroerlucke*, 249 S.W.2d at 131. The court went on to state that:

> The weight of authority holds that fraud may be predicated on promises made without an intention of performance, the gist of which lies not in the breach of the agreement, but in the false representation of an existing intention to do certain things, made for the purpose of inducing another to enter into a contractual relation with him.
>
> . . . .
>
> It has been pointed out in many decisions that promises made without intention of fulfillment in order to induce another to enter a contract may be as culpable and harmful as misrepresentations of existing facts. It has been held that even though the representations relate to the future, if they are positively stated in order to in-

6. The Coffeys also contend that the liabilities of the marina business were also understated by $300,000, thereby balancing the overstatement of the assets.

7. The Coffeys also contend that Moore failed to allege in his affidavit that he suffered an injury as a result of his reliance on the purported misrepresentations. Under Kentucky law, Moore must show that his reliance on the misrepresentations

was the cause of the injury. *Compressed Gas*, 857 F.2d at 352. If the overstatement of the assets played a significant role in Moore's decision to sign the guaranty, or if it contributed in any way to Moore and MOT's decision to purchase the business, or if it contributed to MOT's bankruptcy, such that Moore is now obligated on a five million dollar note, then clearly Moore suffered an injury.

duce another to do something and the party making the representations has no intention of performance, such statements may be misrepresentation of facts on which fraud may be predicated.

. . . .

It is pointed out that the state of the promisor's mind at the time he makes a promise is a fact which is exclusively within his own knowledge and if an intent is represented as being one thing whereas in fact it is the opposite, there is a prima facie presumption that the statement was made not as opinion but as a positive affirmation adapted to the end of inducing entrance into a contractual relation.

*Schroerlucke*, 249 S.W.2d at 131–32. Although an issue involving a person's state of mind is "not necessarily inappropriate" for summary judgment, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989), "state of mind is typically not a proper issue for resolution on summary judgment." *Wilson v. Seiter*, 893 F.2d 861, 866 (6th Cir. 1990), *vacated on other ground*, —— U.S. ——, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Thus, whether the Coffeys made the alleged misrepresentations with the intent to induce Moore to enter the guaranty agreement constitutes a question of fact for a jury to resolve.

For example, paragraph 7(a) of Moore's affidavit alleges that the Coffeys represented to Moore that they had obtained or could easily obtain all necessary approvals from local, state, and federal authorities for the expansion of the marina business. MOT alleges in its complaint, however (and Moore claims entitlement to all MOT claims), that:

> The Coffeys knew, in fact, that any expansion required the prior approval of the Corps of Engineers and, indeed, the Coffeys had received a letter from the Corps of Engineers dated September 29, 1980 stating that the official policy was to deny approval of the expansion of the Marina unless the Corps was assured that such expansion would have no adverse impact

on the privately owned commercial docks operating on Cumberland Lake.[8]

Additionally, paragraph 7(c) of Moore's affidavit states that the Coffeys represented to Moore that an agreement was "all but done" by which the Commonwealth of Kentucky Department of Parks would reduce and stabilize fees paid by the owner of the marina business. Again, MOT's complaint states that, "In fact, the Coffeys knew that such discussions were, at best, preliminary and tentative and that there was no basis in fact to support their misrepresentation that an agreement was close at hand. This 'agreement' was subsequently rejected by the Kentucky Parks Department." Whether the Coffeys made these representations knowing they might not be performed, whether they made them with the sole purpose of inducing Moore to enter the guaranty, whether Moore relied to his detriment on these alleged misrepresentations, and whether Moore knew (or should have known) these representations were false but still elected to ratify the agreement, are all factual issues that make this case inappropriate for summary judgment.

■ Here, the District Court decided the summary judgment motion on the briefs and without oral argument. The District Court concluded that "Moore's affidavit carries no weight because it is refuted by contrary trial evidence." This Court has held, however, that when considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Adkins v. United Mine Workers of America*, 941 F.2d 392, 399 (6th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1180, 117 L.Ed.2d 424 (1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). If Moore was fraudulently induced into entering the guaranty agreement, then he is entitled to be released from his substantial monetary obligation. *See People's State Bank v. Hill*, 210 Ky. 222,

**8.** The complaint goes on to state that the Corps

subsequently approved some of the expansion

275 S.W. 694, 697 (1925).[9] Accordingly, this issue warrants a trial.

### III.

Moore next contends that the District Court erred in granting the Coffeys' motion for summary judgment because Moore's liability on the note cannot be determined until there is an appropriate judicial determination of MOT's obligation. Specifically, Moore argues that MOT's bankruptcy prevents the District Court from determining MOT's obligation and MOT's bankruptcy raises the possibility that MOT's obligation will be reduced by virtue of the "cram-down" provision of the Bankruptcy Code. 11 U.S.C. § 1129(b). The guaranty agreement signed by Moore provides that "Thomas O. Moore hereby personally guarantees the obligation of the Maker's debt to Payee."

 Moore's obligation is not affected in any way by the cram-down provision of the Bankruptcy Code. First, a guaranty is generally classified as either conditional or unconditional. In *APL v. Ohio Valley Aluminum, Inc.*, 839 S.W.2d 571 (Ky.Ct.App.1992), the Kentucky Court of Appeals described the difference as follows:

> An absolute guaranty is a contract by which the guarantor promises that if the debtor does not perform his obligation or obligations, the guarantor will perform some act (such as the payment of money) to or for the benefit of the creditor, irrespective of any additional contingencies.
>
> A conditional guaranty, on the other hand, contemplates as a condition to the guarantor's liability the happening of some contingent event other than the default of the principal debtor, or the performance of some act on the part of the creditor.

(Citation & footnote omitted). *See also* Ky. Rev.Stat.Ann. § 355.3–416(1) (" 'Payment guarantee' or equivalent words added to a signature means that the signer engages that if the instrument is not paid when due, he will pay it according to its tenor without resort by the holder to any other party."). Here, Moore's guaranty is not in any way contingent upon the final outcome of MOT's bankruptcy. Second, to say that Moore's obligation is contingent upon the Bankruptcy Court's determination of MOT's obligation would defeat one of the primary purposes of guaranty agreements; namely, a creditor's attempt to protect against non-payment should the principal be unwilling or unable to pay. Third, discharge of the principal debtor in bankruptcy generally will not discharge the liabilities of guarantors. Section 524(e) of the Bankruptcy Code provides "except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). Thus, if complete discharge of the principal does not affect the guarantor's liability, then certainly a reduction in the principal's obligation (after reorganization) would also not affect the guarantor's obligation.

 While Moore is incorrect in his assertion that the bankruptcy cram-down provision could affect his obligation to the Coffeys, he is correct in his general assertion that his obligation on the guaranty cannot be determined until MOT's obligation on the underlying contract is determined. It is clear that the "liability of a surety is ... commensurate with that of his principal...." *E'Town Shopping Center, Inc. v. Lexington Finance Co.*, 436 S.W.2d 267, 269 (Ky.1969). Thus, if the counterclaims and affirmative defenses asserted by MOT against the Coffeys are adjudged meritorious, such that MOT is relieved of its contractual obligations, then Moore will also either be released from his guaranty obligation or, alternatively, entitled to the benefit of the set-offs received by MOT. The Coffeys concede that MOT's set-off claims have not yet been decided.

---

but denied other expansion efforts.

9. The Coffeys contend that Moore is not entitled to rescission of the guaranty agreement because MOT has already elected the remedy of set-off. What the Coffeys apparently fail to realize, however, is that Moore's contract is separate from MOT's contract. MOT has elected set-off (as its remedy) on the *underlying* contract of sale. Moore is claiming (*i.e.* "electing") an entitlement to rescind the *guaranty* agreement.

As mentioned earlier, under Kentucky law, one claiming to have been defrauded into making a contract has an option either to disaffirm the contract and seek its rescission or to affirm the contract and seek damages. *Suter*, 330 S.W.2d at 406. The filings of MOT make clear that it has elected to affirm the contract and receive damages (as a set-off against the purchase price). We need not decide whether Moore, as guarantor, can elect rescission once his principal has elected set-off, because Moore is not claiming he owes no "obligation" to the Coffeys if it is found he was not fraudulently induced to enter into the guaranty. Moore is merely claiming that he is entitled to the benefit of any set-offs that might be granted in favor of MOT.[10] We agree. Accordingly, the District Court erred in granting the Coffeys' motion for summary judgment and ordering Moore to pay approximately $5.5 million dollars. To determine Moore's obligation on the guaranty agreement, there must first be a finding of the amount of MOT's set-offs etc. to determine the amount due on the underlying contract. That determination can be made in this action.

## IV.

For the aforementioned reasons, the judgment of the District Court is **REVERSED**, and this case is **REMANDED** for further proceedings consistent with this opinion. Each party shall bear their own costs.

---

**10.** The Coffeys rely on *Curtiss–Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980) for the proposition that an opposing party's set-off claims are no impediment to summary judgment on the overriding contract or other similar claim. Here, however, Moore is seeking credit for MOT's set-offs etc. to reduce the amount due on the underlying obligation he guaranteed.