# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

v.

JOHNNY LYNN OLD CHIEF,
  *Defendant-Appellant.*

No. 08-30317

D.C. No.
4:08-cr-00027-SEH

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

v.

MAYNARD MICHAEL OLD CHIEF,
  *Defendant-Appellant.*

No. 08-30318

D.C. No.
4:08-cr-00027-SEH

OPINION

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Argued and Submitted
June 5, 2009—Portland, Oregon

Filed July 6, 2009

Before: Alfred T. Goodwin, Diarmuid F. O'Scannlain and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge Goodwin

## COUNSEL

J. Mayo Ashley, Helena, Montana, for defendant-appellant Johnny Lynn Old Chief, Evangelo Arvanetes, Assistant Federal Public Defender, Great Falls, Montana, for defendant-appellant Maynard Michael Old Chief.

Carl E. Rostad, Assistant United States Attorney, Great Falls, Montana, for the plaintiff-appellee.

## OPINION

GOODWIN, Circuit Judge:

Johnny Lynn Old Chief ("Johnny Lynn") appeals his 120-month sentence imposed following a jury conviction for aiding and abetting an assault with a dangerous weapon, in violation of 18 U.S.C. §§ 1153(a), 113(a)(3). Maynard Old Chief ("Maynard") also appeals his 120-month sentence from a jury conviction for assault with a dangerous weapon, in violation of 18 U.S.C. §§ 1153(a), 113(a)(3). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## FACTUAL BACKGROUND

On December 29, 2007, Johnny Lynn (a.k.a. Johnny Rotten) was holding a party at his residence in the Low Rent neighborhood of the Blackfeet Indian Reservation in Browning, Montana. The party had begun a few days before then and involved numerous individuals, including Johnny Lynn and Maynard, Lundy Red Head ("Red Head"), and Jay Old Chief, and an abundance of alcohol. As witnesses described the events, on the night in question, fights between and among party guests began to break out. Red Head, who described himself as "pretty drunk" at the time, eventually left Johnny Lynn's residence. An argument began in front of Carl La Plant's home, a few houses down from Johnny Lynn's house. Red Head then saw La Plant, accompanied by another individual named Little Garrett Renville, come out of La Plant's home with "two-by-fours," bricks, and rocks. A fight involving Red Head, Jay Old Chief, La Plant and Renville broke out. Johnny Lynn and Maynard both approached the scene at this time. Maynard was carrying a knife, and Jay Old Chief picked up a metal fence post and told Red Head to stay behind him because of Red Head's intoxication. As Maynard continued to advance toward them with the knife in his hand, Jay Old Chief hit Maynard in the head. Red Head described Maynard as falling to the ground momentarily, but getting back to

his feet shortly thereafter. Jay Old Chief ran into Red Head's home, and Red Head attempted to follow. To avoid being caught by Maynard and Johnny Lynn, Red Head ducked behind the house at 636 Low Rent. Red Head momentarily believed he was safe, but Johnny Lynn and Maynard had in fact caught up to him. Red Head described Johnny Lynn putting Red Head's hands behind his back while Red Head struggled, and when Red Head raised his arm to protect himself, Maynard stabbed him on his right bicep with his knife. Red Head broke loose from Johnny Lynn's grasp and swung at Maynard with his right arm while Johnny Lynn still had a hold of his left hand. Red Head jerked his body back, and then was stabbed again by Maynard, this time on his left arm and shoulder. Red Head fell to his knees and began screaming for help, and was then stabbed by Maynard for the third time, this time in the neck.

Shortly after the above described events, Officer Edwin Salois answered a call about a disturbance in the neighborhood and arrived at the scene. The armed officer eventually persuaded Maynard to drop the knife, Meanwhile, Johnny Lynn was on top of Red Head, holding him. After Maynard released Red Head, Officer Salois told Maynard to stay on the ground. Several other officers arrived and took Johnny Lynn and Maynard into custody.

On May 6, 2008, Maynard and Johnny Lynn's consolidated jury trial began before Judge Haddon in Great Falls, Montana. After deliberations of less than a day, the jury returned a verdict of guilty to the single count presented. Sentences were imposed on August 25, 2008, and this timely appeal followed.

## I.   The District Court Did Not Err in Applying the Physical Restraint Enhancement

Johnny Lynn's first argument, in which he is joined by Maynard Old Chief, contends that the restraint necessary to accomplish an assault merges with the assault itself, and the

two-level sentencing enhancement they received pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 3A1.3 is therefore invalid.

**[1]** The relevant portion of the Guidelines reads as follows: "If a victim was physically restrained in the course of the offense, increase by 2 levels." U.S.S.G. § 3A1.3. In the Commentary following that section, however, the Commission notes that the adjustment is not to be applied where "the offense guideline specifically incorporates this factor, or where the unlawful restraint of a victim is an element of the offense itself (e.g., this adjustment does not apply to offenses covered by § 2A4.1 (Kidnapping, Abduction, Unlawful Restraint))." App. n.2, U.S.S.G. § 3A1.3. Appellants argue that the act of stabbing victim Red Head necessarily involved restraint and is therefore excepted from the two-level enhancement as described in Application Note 2.

Appellants rely exclusively on a Fourth Circuit case from 1991, in which a divided panel held that because "[e]very murder involves the ultimate restraint," and "[s]uch terminal restraint is simply an element of the crime of homicide," the district court incorrectly added a two-level enhancement to defendant's total offense level. *United States v. Mikalajunas*, 936 F.2d 153, 156 (4th Cir. 1991).

Appellants' reliance on *Mikalajunas* is misplaced.[1] The *Mikalajunas* case involved murder, not an assault, and the

---

[1]The Fourth Circuit's reasoning in *Mikalajunas* has been criticized, *see United States v. Checora*, 175 F.3d 782, 791-92 (10th Cir. 1999), but the question of whether the restraint enhancement can be applied to a homicide conviction is not before us. Here, "[t]he physical restraint that occurred in this case is not a necessary element of the crime[s] of [conviction]. The same offense[s] could be committed against an unrestrained victim. Indeed, [assault] may be committed in many different ways and it need not involve the sort of [restraint] that occurred in this case. The restraint of [Red Head] to prevent his escape added to the offense, it facilitated its commission." *Checora*, 175 F.3d at 792.

language presented in the majority opinion in *Mikalajunas* suggests that the circumstances surrounding a murder are unique for purposes of applying the two-level restraint enhancement. The majority acknowledged that "[a]n upward adjustment for restraint is to be made in the context of an act which adds to the basic crime." *Id.*

**[2]** Here, Johnny Lynn's restraint of the victim *was* an act that added to the basic crime. Even if a stabbing necessarily involves some minimal level of restraint, *see United States v. Parker*, 241 F.3d 1114, 1118-19 (9th Cir. 2001) (declining to apply restraint enhancement where bank robber pointed gun at bank employee and told her get down, because it was "likely that Congress meant for something more than briefly pointing a gun at a victim and commanding her once to get down to constitute physical restraint, given that nearly all armed bank robberies will presumably involve such acts").

**[3]** We have no difficulty concluding the degree of restraint here is not inherent in every stabbing. Johnny Lynn chased down Red Head to prevent him from evading Maynard Old Chief and then held Red Head's arms as Maynard stabbed him three times. Although Red Head briefly broke free from Johnny Lynn's grasp, Johnny Lynn's restraint of Red Head prevented Red Head from protecting himself from at least two of Maynard's thrusts and prolonged the assault by preventing Red Head from fleeing. Johnny Lynn's restraint could not be described as brief; it was ongoing during the course of the offense.

The officer who first arrived at the scene testified that Johnny Lynn was still on top of Red Head, even after the near-fatal knife attack was complete, and while Red Head was trying to "crawl forward." The circumstances presented in this case bear greater resemblance to cases decided in sister circuits, where the courts have upheld the use of sentencing enhancements for physical restraint of victims. *See, e.g.*, *Checora*, 175 F.3d at 792 (noting that *Mikalajunas* "did not pur-

port to address whether the acts of chasing down and catching the victim could constitute restraint" and affirming the application of the restraint-of-the-victim enhancement); *see also United States v. Ossai*, 485 F.3d 25, 33 (1st Cir. 2007) (holding that the act of pointing a gun at a victim while placing a hand on his body to force him to kneel constituted physical restraint as envisioned by the Guidelines); *United States v. Plenty*, 335 F.3d 732, 736 (8th Cir. 2003) (holding that because defendant was "exercising control over [the victim] that prevented her freedom of movement, prevented her escape, and facilitated the assault by allowing him to continue to kick and strike her," the use of the physical restraint enhancement was proper.).

**[4]** Furthermore, as we noted in *United States v. Parker*, "[t]he application note to § 2B3.1(b)(4)(B) defines 'physically restrained' as the 'forcible restraint of the victim such as by being tied, bound, or locked up.' These examples are illustrative and not exclusive." *Parker*, 241 F.3d at 1118 (citations omitted); *see also United States v. Foppe*, 992 F.2d 1444, 1448 (9th Cir. 1993) (holding that grabbing a victim is sufficiently similar to the examples in the Guidelines note to qualify as a type of restraint). We AFFIRM the physical restraint sentencing enhancement as to both Johnny Lynn and Maynard Old Chief.

## II. The District Court Properly Applied the Use of a Dangerous Weapon Sentencing Enhancement to Johnny Lynn

Johnny Lynn also objects to the three-point enhancement recommended in the PSR and imposed by the district court for use of a weapon during the course of the offense. He claims that since he never held the knife used to assault the victim, he should not be penalized by the sentencing enhancement.

**[5]** Section 2A2.2 of the Guidelines provides that "[i]f . . . a dangerous weapon (including a firearm) was otherwise

used, increase by 4 levels." U.S.S.G. § 2A2.2(b)(2)(B). In sentencing for crimes involving the concerted actions of several parties, the Guidelines provide that a defendant's base offense level shall be determined in part by "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity . . . ." U.S.S.G. § 1B1.3(a)(1)(B).

**[6]** The testimony presented at trial fully supported a verdict that it was "reasonably foreseeable" that Maynard would use a knife in furtherance of the joint criminal enterprise of the assault against Red Head. Red Head testified that Maynard Old Chief "flashed his knife" in front of Johnny Lynn and Red Head, at Johnny Lynn's home, after slicing Glenna Rae Mittens in the neck. Also, the entire time that Maynard and Johnny Lynn were pursuing Red Head, Maynard had the knife in his hand. Nothing in this record suggests that Johnny Lynn was not aware of the knife, or that it was not reasonably foreseeable to him that the knife would be used in the attack on Red Head.

**[7]** Ninth Circuit case law forecloses Johnny Lynn's argument. We have affirmed sentencing enhancements in cases where a co-defendant's knowledge of a weapon has been far less clear than here. *See, e.g.*, *United States v. Wills*, 899 F.2d 873 (9th Cir. 1990) (affirming a wife's sentencing enhancement when her husband maintained possession of the gun, because there was "evidence indicating that the husband's gun was visible, and thus it was reasonable to infer that the wife had actual knowledge of its possession" and that "where the co-conspirators are few in number and know each other well, the court may infer that each participant knew the others' methods of operation") (internal quotations and citations omitted); *see also United States v. Delgado*, 981 F.2d 1260, 1260 (9th Cir. 1992) (holding that it was "irrelevant that Delgado had no actual knowledge of the gun" because it was "reasonably foreseeable that his co-defendant would possess a gun during the execution of a bank robbery").

**[8]** The district court did not err in its application of the weapons enhancement.

**AFFIRMED.**