888 F.2d 1391
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Blake JACKSON, a minor, by next friend and natural guardian,
Joy M. Jackson, Plaintiff,
Jeffrey L. HALL, Attorney-Appellant,
v.
NISSAN MOTOR CORPORATION IN USA, Nissan Motor Co., Ltd.,
Defendants-Appellees.
 No. 88-6132.
 United States Court of Appeals, Sixth Circuit.
 Oct. 30, 1989.
 
 Before KEITH, NATHANIEL R. JONES, and RALPH B. GUY, Circuit Judges.
 PER CURIAM.
 
 
 1
 The sole issue presented by this appeal is whether the district court abused its discretion by imposing sanctions against the plaintiff's attorneys under Fed.R.Civ.P. 37(d), requiring them to pay $66,529.05 in fees and expenses to defendants' attorneys. Because we conclude that the district court did abuse its discretion in ordering the award, we reverse and remand this case for further proceedings consistent with this opinion.
 
 
 2
 This case evolved from a product liability action involving a 1978 Datsun automobile that allegedly spewed battery acid onto the face and body of Blake Jackson, who was a passenger in the vehicle when it was struck from the rear by another vehicle. At the time of the June 1985 accident, which occurred in Tennessee, Blake Jackson was four years old. He was severely burned and mutilated as a result of the accident. Plaintiff's theory was that defendants, Nissan Motor Corporation in U.S.A. and Nissan Motor Company, Ltd., designed, manufactured, and distributed a defective vehicle by placing the battery below the floor of the rear passenger compartment. On June 20, 1986, Joy Jackson filed a complaint against Nissan on behalf of her son. Federal jurisdiction was based on diversity, 28 U.S.C. Sec. 1332(a).
 
 
 3
 By way of background, the Jacksons were initially represented in this suit by Robert Warren of North Carolina and by Jeffrey Hall of Tennessee.[1] Darrell Johnson, a South Carolina attorney, was brought in to assist the plaintiff at a later point in time. In preparation for filing the product liability lawsuit, Warren sought to locate and purchase the demolished 1978 Datsun. To that end, he engaged the assistance of his firm's investigator, James Nave. Nave traced the vehicle to N & S Used Foreign Car Parts (N & S) in Nashville, which was operated by Neil Chaffin. In February 1986, Nave wrote to Wayne Lee, Hall's investigator, requesting that Lee visit N & S to verify Nave's findings.[2] Lee complied and gave Chaffin a small deposit to hold the vehicle until Warren could arrange to purchase it. Lee dictated a memo regarding his visit, which specified the location of the vehicle. He sent a copy of his memo to Warren and retained a copy for his files in Hall's office. Warren purchased the car for $200 on February 28, 1986. Although the letter accompanying his check indicated that the car would be picked up within ten days, a subsequent March 10, 1986, letter stated that the car would be picked up within forty-five days and that storage fees of two dollars per day were acceptable. He never picked up the car and never paid any storage fees.[3]
 
 
 4
 Two months after the products liability suit was filed, Hunter C. Quick, one of Nissan's attorneys, contacted Hall regarding the vehicle. Hall mistakenly told him that the car was being stored somewhere in Wilson County, Tennessee, and agreed to allow defendants to inspect the vehicle. Hall indicated that he would get back to Quick regarding the desired inspection. In September, Quick again contacted Hall about the inspection and was told that Hall would get back to him once he determined the vehicle's specific location. On September 9, 1986, Quick sent Hall a letter confirming Hall's agreement to let defendants inspect the car. On September 11, 1986, Hall advised Quick, by telephone, that plaintiff's expert would inspect the vehicle on October 3, 1986, and that defendants could examine it sometime thereafter.[4]
 
 
 5
 On September 18, 1986, Nissan submitted interrogatories to Hall inquiring, among other things, about the precise location of the Datsun. Quick's letter accompanying the interrogatories indicated that he was talking to his client about inspection of the car and that he would contact Hall to set a date for their inspection after plaintiff's October 3 inspection. Plaintiff's inspection took place as planned. At that time, Chaffin advised Lee that he had not received any of the storage fees that had been accumulating since the February 1986 purchase. He estimated those fees to be around $800 and indicated that he expected payment soon. Lee gave Chaffin Warren's phone number before leaving, and, upon his return to the office, discussed his visit with Hall and dictated a memo to his files.
 
 
 6
 By October 28, Chaffin still had not received any storage fees or any other instructions regarding the vehicle. Accordingly, he contacted Warren's office and left a message with an answering service indicating that the car would be destroyed if Warren did not contact him. The next day, having not heard from Warren,[5] Chaffin sold the car to West Nashville Auto Salvage, which scrapped and destroyed the vehicle.
 
 
 7
 On November 18, another Nissan attorney sent Hall a set of interrogatories and indicated that the responses to the prior set were thirty days late. These were followed by several phone calls, including one on December 22 insisting on immediate inspection of the vehicle and responses to the first set of interrogatories. For the first time, Hall revealed that the car was stored in Nashville, which is in Davidson, not Wilson County. He did not pinpoint the exact location. Quick indicated that the defendants were in the process of hiring their expert and that he would call back the next day to schedule an inspection date. The expert was hired on December 23 and the inspection was scheduled for January 21, 1987. Quick reiterated that the answers to the interrogatories were essential to their preparation for the inspection but granted Hall until January 15 to answer. Quick postponed the inspection until January 30 and the parties agreed that Wayne Lee, of Hall's office, would escort defendants' representatives to the car. Hall did not provide answers to the interrogatories until the morning of the inspection and, even then, the answers were presented as an unsigned draft. When Lee, Quick, and defendants' expert arrived at N & S, they learned that the car had been destroyed in late October. Its destruction was confirmed by West Nashville Auto Salvage.
 
 
 8
 This turn of events precipitated defendants' April 1, 1987, motion for sanctions pursuant to Fed.R.Civ.P. 37(d) and the court's inherent authority. In response, the district court ordered discovery, followed by a hearing, concerning the destruction of the vehicle.[6] The district court continued the hearing to take additional testimony to determine whether plaintiff's expert's examination of the vehicle prior to its destruction could establish the requisite proximate causation of Blake Jackson's injuries. After an additional hearing on the matter, the district court took the case under advisement. On June 27, 1988, relying exclusively on its authority under rule 37(d), the district court entered its order dismissing the plaintiff's complaint and ordering plaintiff's attorneys to pay $50,000 in attorneys' fees and $16,529.05 in costs and expenses.[7] A motion to alter or amend or for reconsideration was denied. Although the denial prompted appeals by the plaintiff, attorney Johnson, and attorney Hall, this appeal is concerned solely with Hall's liability for the attorneys' fees and expenses.[8]
 
 I.
 
 9
 The the standard of review governing a district court's imposition of sanctions is the abuse of discretion standard. National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639 (1976); Regional Refuse Systems v. Inland Reclamation Co., 842 F.2d 150 (6th Cir.1988).
 
 
 10
 Rule 37 of the Federal Rules of Civil Procedure governs sanctions for one's failure to make or cooperate in discovery. The purpose of imposing sanctions is to "assure both future compliance with the discovery rules and to punish past discovery failures, as well as to compensate a party for expenses incurred due to another party's failure to properly allow discovery." Bell v. Automobile Club of Michigan, 80 F.R.D. 228, 229 (E.D.Mich.1978), cert. denied, 442 U.S. 918 (1979). The district court invoked the authority granted it in Rule 37(d) in imposing the sanctions at issue. Rule 37(d) provides:
 
 
 11
 Failure of Party to Attend at Own Deposition or Serve Answers to Interrogatories or Respond to Request for Inspection. If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails (1) to appear before the officer who is to take the deposition, after being served with a proper notice, or (2) to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories, or (3) to serve a written response to a request for inspection submitted under Rule 34, after proper service of the request, the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under paragraphs (A), (B), and (C) of subdivision (b)(2) of this rule. In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.
 
 
 12
 The failure to act described in this subdivision may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has applied for a protective order as provided by Rule 26(c).
 
 
 13
 The district court noted that although defendants had not sought or obtained an order compelling discovery, Rule 37(d) allows the court to avail itself of sanctions otherwise available for contempt of such orders. See Fed.R.Civ.P. 37(b)(2)(a), (b), and (c). The rationale for allowing sanctions without contempt of a prior court order is that an injured party may be unaware that key discovery information has been withheld and, therefore, may not seek an order to compel discovery. See Badalamenti v. Dunham's, Inc., 118 F.R.D. 437, 439 (E.D.Mich.1987). Rule 37(d) also authorizes the court to award attorneys' fees and expenses resulting from one's failure to attend a deposition, answer interrogatories, or respond to a request for inspection.
 
 
 14
 The district court determined that Hall "failed to respond to a request for inspection" and characterized Hall's conduct as "extremely careless inaction." (App. 57). The court faulted Hall for his grossly negligent "handling of important aspects of discovery." (Id.). The court also cited Hall's repeated refusals to timely respond to Nissan's interrogatories, his series of broken promises to respond, and his haphazard response that was rendered useless by its tardiness. In addition, the court faulted Hall for failing to disclose the location of the Datsun despite his ready access to information pinpointing the location. The court essentially faulted Hall for failing to secure the most vital piece of evidence in the case. The court determined that Hall's conduct "contravene[d] the cooperative spirit of discovery." (App. 58). He failed to convey to Chaffin that the car was a key piece of evidence in a lawsuit and failed to pay any of the accruing rental fees, even after Warren withdrew from the case.[9]
 
 
 15
 The court deemed Hall's inaction sanctionable. In ascertaining the appropriate sanctions, the court conducted additional hearings to determine the extent of prejudice to Nissan occasioned by Hall's conduct. Concluding that the prejudice was severe and irremediable, the court dismissed the case and awarded Nissan fees and costs, finding "[g]ross negligence" the "mildest construction" applicable to the facts before it. (App. 63).
 
 II.
 
 16
 Hall challenges the district court's award of attorneys' fees and costs to Nissan on three grounds. First, he claims that Rule 37(d) is not applicable to this case, which renders the sanctions inappropriate. Next, Hall claims that even if Rule 37(d) is applicable, the sanctions should, instead, be imposed against Warren or Chaffin because they were responsible for the Datsun's destruction. Finally, Hall claims that, if Rule 37(d) is applicable, the district court abused its discretion in imposing the sanctions solely on the basis of an affidavit of one of Nissan's attorneys.
 
 
 17
 We reject Hall's second claim outright, noting that neither Warren nor Chaffin is a party to this action. Hall was plaintiff's exclusive counsel of record until Darrell Johnson, in February 1987, entered an appearance in the case. Warren's withdrawal from the case left the matter entirely in Hall's hands. Moreover, neither Warren nor Chaffin was involved in the discovery abuses committed by Hall. Rather, it was Hall's failure to comply with the rules of discovery that precipitated the sanctions. To the extent that Chaffin's or Warren's actions contributed to the ultimate destruction of the Datsun, their roles were secondary to Hall's conduct giving rise to the sanctions in the first place. Accordingly, we find that the district court's order did not and should not have extended to Warren and Chaffin.
 
 
 18
 With respect to Hall's remaining claims, we find that Rule 37(d) is applicable to this case, but that the district court abused its discretion by imposing, on top of the severe sanction of dismissal, costs and fees that are not linked with sufficient particularity to Hall's failure to comply with the rules of discovery.
 
 
 19
 As noted, Rule 37(d) authorizes a district court to impose discovery sanctions notwithstanding the absence of an order compelling discovery. In this case, Hall urges that because he ultimately did submit answers to the interrogatories, albeit in an unsigned draft form, and because he never refused Nissan permission to inspect the vehicle, there has not been the "total failure to respond" essential to imposing Rule 37(d) sanctions. Although some cases support Hall's position, see, e.g., Fox v. Studebaker-Worthington, Inc., 516 F.2d 989, 995 (8th Cir.1975), the majority view authorizes Rule 37(d) sanctions when a party's "evasive or incomplete answers to proper interrogatories impede discovery." Badalamenti, 118 F.R.D. at 439 (citing Bell v. Automobile Club of Michigan, 80 F.R.D. 228, 232 (1978) (misleading interrogatory answers tantamount to failure to answer interrogatories); Airtex Corp. v. Shelley Radiant Ceiling Co., 536 F.2d 145, 155 (7th Cir.1976)). For the previously described reasons, we find ample support in the record for the district court's apparent determination that Hall's conduct with respect to the interrogatories and the inspection so impeded Nissan's discovery efforts as to constitute a failure to comply with discovery within the meaning of Rule 37(d). Accordingly, we find no abuse of discretion in the court's decision that sanctions were indicated.
 
 
 20
 Where we do find an abuse of discretion, however, is in the district court's failure to establish that the $66,529.05 in attorneys' fees and expenses awarded are tied directly to Hall's failure to comply with the rules of discovery and not to other amounts expended in defending the case. Although we are not considering the propriety of the court's dismissal of this case, we cannot examine the attorneys' fees and costs sanction in isolation from the dismissal sanction. We have stated that "[d]ismissal of an action for failure to cooperate in discovery is a sanction of last resort that may be imposed only if the court concludes that a party's failure to cooperate is due to willfulness, bad faith, or fault." Regional Refuse Systems, 842 F.2d at 154 (citing Patton v. Aerojet Ordinance Co., 765 F.2d 604, 607 (6th Cir.1985)). Accordingly, other sanctions, such as attorneys' fees and costs, are deemed less drastic than the ultimate sanction of dismissal. In this case, the ultimate sanction was imposed and, although Rule 37(d) authorizes the court to augment its sanction of dismissal, we cannot condone such a sanction as a proper exercise of the court's discretion without assurance that those fees and expenses are tied directly to the discovery abuse giving rise to the sanction.
 
 
 21
 In this case, the district court's award of fees and costs was based on an affidavit submitted by Jon D. Ross, a partner in the law firm of Neal & Howard, and a counsel of record for Nissan in this case. He stated that the total amount of legal services rendered by his firm "for the period from February 1, 1987, through March 1, 1988, in connection with defendants' [then] pending motion for sanctions is $68,978.75." (App. 414). He allocated the costs for services as follows:
 
 
 22
 Jon D. Ross 299.25 Hours [at $125 per hour]
Hunter C. Quick 302.75 Hours [at $85 per hour]
Susan McDonald 47.50 Hours [at $75 per hour]
Other Neal & Harwell Attorneys 6.25 Hours
Paralegals 43.00 Hours
 
 
 23
 The expenses and other costs incurred were stated to equal $16,529.05, as set forth below:
 
 
 24
 Expense Advancements
Subpoena Fees $ 32.40
Service of Subpoenas $ 133.35
Photo Finishing $ 379.71
Secretarial Overtime $ 189.00
Court Reporter $ 3,241.80
Invetech Bill $ 1,131.50
Transcripts $ 320.00
Photographs $ 832.37
Outside Copy Expense $ .50
Long Distance $ 499.48
Witness Fees $ 297.24
Express Mail $ 535.20
Copying Expenses $ 2,122.30
Travel and Lodging $ 1,075.31
Professional Services $ 478.71
Mechanical Engineering Services $ 274.11
Engineering Design, Inc. $ 524.00
Investigative Work $ 339.25
Lexis $ 547.09
Professional Services $ 3,575.73
---------------------------------------------
TOTAL $ 16,529.05
 ---------
 ---------
 
 
 25
 We are unable to determine, without more information, that the amount claimed here for legal services properly represents hours spent exclusively on Nissan's motion for sanctions, or improperly represents amounts incurred related to other aspects of the case. The federal courts have long subscribed to the "American rule," under which litigants pay their own attorneys' fees, absent express statutory or contractual language to the contrary, Tiedel v. Northwestern Michigan College, 865 F.2d 88, 92 (6th Cir.1988) (quoting Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 257 (1975)). Accordingly, Nissan is responsible for any attorneys' fees incurred that are unrelated to legal services attributable to Hall's failure to comply with the rules of discovery. We recognize that the district court reduced the fee award from the requested $68,978.75 to $50,000, which suggests that the court reviewed the reasonableness of the fees.[10] What the district court failed to do, however, is to find that the fees claimed were limited to those permissible under Rule 37(d) and did not contravene the American rule.
 
 
 26
 Likewise, although it was unnecessary for the district court's order to include a "detailed list of each expenditure made," Bell, 80 F.R.D. at 235, the court should have explained the basis for its satisfaction that the expenses claimed and awarded were limited to those incurred by defendants as a consequence of Hall's misconduct. Id.
 
 
 27
 For the foregoing reasons, we conclude that the district court abused its discretion in ordering Hall to pay the attorneys' fees and expenses and, accordingly, reverse that order.
 
 III.
 
 28
 Nissan urges that the district court's order can be affirmed as a proper exercise of the court's inherent authority, independent of Rule 37, to impose sanctions for abuse of the judicial process. Scharer & Co. v. Plabell Rubber Prods., Inc., 858 F.2d 317 (6th Cir.1988). "[W]here a party or counsel have acted in bad faith in the instigation or conduct of litigation ... the court has the inherent authority to assess an award of attorney's fees." Id. at 320 (citing Roadway Express, Inc. v. Piper, 447 U.S. 752, 765-66 (1980)). Nissan urges that Hall's bad faith and willful misconduct compels our affirmance of sanctions independent of Rule 37. We disagree, noting that although the district court faulted Hall for impeding Nissan's discovery and for failing to assure preservation of the Datsun, the court explicitly stated that "[d]espite evidence in the record to the contrary, the Court does not find that these attorneys showed bad faith or willfulness." (Emphasis added). Rather, the court described the attorneys' conduct as "careless inaction." Moreover, the court noted that although the Supreme Court referred to a court's inherent authority to award attorneys' fees as a sanction in "narrowly defined circumstances" in Roadway Express, 447 U.S. at 765, in Societe Internationale v. Rogers, 357 U.S. 197, 207 (1958), the Supreme Court discouraged resort to authority beyond the Federal Rules of Civil Procedure for imposing sanctions. In this case, we decline to affirm the district court's order solely on the basis of the court's inherent authority because, even if resort to such authority is proper, the district court determined that plaintiff's attorneys' conduct did not reflect the bad faith and willfulness that typically triggers such sanctions.
 
 
 29
 The district court's order is REVERSED and the case is REMANDED for further proceedings consistent with this opinion. The district court should make appropriate findings verifying that the fees and costs imposed as sanctions beyond dismissal are limited to those incurred by Nissan because of Hall's misconduct as it related to the delay in making the car available for inspection and its ultimate destruction. See Badalamenti v. Dunham's, Inc., 125 F.R.D. 445, 448 (E.D.Mich.1989).
 
 
 
 [1]
 The Jacksons were previously represented by Warren and Hall in their suits against the driver of the other vehicle. Those suits were settled prior to trial
 
 
 [2]
 Lee was based in Tennessee while Nave was based in North Carolina. Therefore, it apparently was more convenient for Lee to visit N & S to verify the location of the vehicle
 
 
 [3]
 Warren withdrew from this case on October 7, 1986, and sought reimbursement from Hall for the $200 spent to acquire the car
 
 
 [4]
 There is conflicting testimony as to whether Hall offered to have a simultaneous examination of the car
 
 
 [5]
 Warren denies having received a message from Chaffin despite telephone records documenting that a call was placed from Chaffin's place of business to Warren's office
 
 
 [6]
 The court also held a show cause hearing for plaintiff's failure to file a scheduling order
 
 
 [7]
 The court's order specifies that the fees and expenses are to be paid by plaintiff's attorneys and not by the plaintiff
 
 
 [8]
 Apparently, after the plaintiff appealed the district court's dismissal of her claim, she entered into a settlement agreement with Nissan. The plaintiff and Nissan subsequently moved this court to dismiss plaintiff's appeal with prejudice and to remand the case to the district court for hearing and approval of their settlement agreement. Likewise, attorney Darrell Johnson moved this court to dismiss his appeal as part of a compromise and settlement reached between him and Nissan
 
 
 [9]
 Although Hall claims that he thought the fees would be paid at once at the end of the vehicle's storage, the evidence indicates that only short-term, i.e., forty-five days, storage was anticipated and that Lee, at the time of plaintiff's inspection, was aware of Chaffin's expectation of prompt payment of the $800.00 accrued in storage fees
 
 
 [10]
 Although Nissan claims that Hall is precluded from challenging the reasonableness of the district court's fee and expense award by failing to raise the issue before that court, we note that Hall has preserved on appeal his challenge to his liability for those fees and expenses. Accordingly, it is proper for us to ascertain the limits of his liability