NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0310n.06

Nos. 22-1740/1764

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| RAYMOND MCDOWELL; TAJ DORSEY, | ) | |
| Plaintiffs-Appellees/Cross-Appellants, | ) ) | **FILED**<br>Jul 11, 2023<br>DEBORAH S. HUNT, Clerk |
| v. | ) ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| LIVONIA HOTEL BUSINESS, INC., dba Americas | ) | COURT FOR THE EASTERN |
| Best Value Inn; EDWARD MAKMOURA, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendants-Appellants/Cross-Appellees. | ) | OPINION |
| | ) | |

Before:  SUTTON, Chief Judge; LARSEN and MURPHY, Circuit Judges.

LARSEN, Circuit Judge.  This civil suit arises out of an armed robbery that took place at a motel in Livonia, Michigan.  Plaintiffs, Raymond McDowell and Taj Dorsey, were guests at the motel when they were violently attacked in their room in the early morning.  They sued the motel and the front desk clerk for negligence.  The case went to trial, and the jury returned a verdict for the plaintiffs.  Because the jury found that McDowell was eighty-percent responsible for his own injuries, the court reduced his award by eighty percent.  Both parties filed post-trial motions and now appeal the district court's rulings.  We AFFIRM.

I.

Plaintiffs Raymond McDowell and Taj Dorsey are New Jersey residents who work as truckers.  In February 2018, McDowell hired Dorsey to help him with a furniture delivery in the metro Detroit area.  McDowell later used a listing on Craigslist.com to hire nonparty Antonio Fowler-Mitchell to help with the delivery.  He did not perform a background check on Fowler-Mitchell before hiring him.  After finishing the delivery, McDowell and Dorsey rented a motel

room at the America's Best Value Inn Livonia. McDowell asked Fowler-Mitchell to buy him alcohol and deliver it to plaintiffs' motel room, where McDowell would pay Fowler-Mitchell for his work. Fowler-Mitchell came to the motel room where McDowell pulled out a "large wad of cash" to pay him. Fowler-Mitchell received payment and stayed to socialize for about an hour. After Fowler-Mitchell left, plaintiffs locked their hotel room and went to bed.

Later that night at around 4:30 a.m., Fowler-Mitchell called McDowell to ask if he could spend the night in the motel room because his girlfriend had kicked him out. McDowell told Fowler-Mitchell not to come. At around 6:00 a.m., Fowler-Mitchell showed up at the motel room and knocked on the door. Neither McDowell nor Dorsey answered because they believed Fowler-Mitchell was drunk. McDowell and Dorsey did not call the police or seek help from anyone else; instead, they began to pack up to leave the motel. Fowler-Mitchell went to the motel's front desk and asked the motel clerk, Edward Makmoura, for a key card to the room. Without asking for identification, Makmoura gave Fowler-Mitchell a key card. Then Fowler-Mitchell and two unidentified individuals kicked in the motel room door, beat up McDowell and Dorsey, and took cash from them. Fowler-Mitchell was arrested and pleaded guilty to first-degree home invasion, two counts of armed robbery, and possession of firearms as a felon. He is currently serving his sentence in prison.

McDowell and Dorsey sued Livonia Hotel Business, Inc. (dba America's Best Value Inn) and Edward Makmoura in federal court (collectively, "the hotel"). The district court dismissed most of the plaintiffs' claims but allowed their negligence claim to proceed. Plaintiffs alleged that the hotel was negligent for failing to operate the premises in a reasonably safe condition, including by failing to have an adequate safety policy regarding room key control and security.

The case went to trial. The jury found that the hotel was negligent and that its negligence was a proximate cause of both plaintiffs' injuries. The jury also found that McDowell was comparatively negligent and determined that he was 80 percent at fault for his own injuries and that the hotel was only 20 percent at fault. As a result, the court reduced McDowell's damages by 80 percent. But the jury found that Dorsey was not comparatively negligent. Dorsey's verdict form did not allow the jury to assign any percentage of fault to McDowell for Dorsey's injuries, and the jury assigned 100 percent of the fault for Dorsey's injuries to the hotel. The court ordered the hotel to pay for all of Dorsey's damages.

After trial, both sides filed post-judgment motions under Federal Rules of Civil Procedure 50 and 59. *See McDowell v. Livonia Hotel Bus., Inc.*, No. 19-10217, 2022 WL 2916675, at *1 (E.D. Mich. July 25, 2022). The hotel's motion sought to reduce Dorsey's damages award by 80 percent, arguing that under Michigan's "fair share" liability scheme, the hotel should not have been held liable for 100 percent of Dorsey's damages. The court denied the motion, based in part on its understanding of Michigan law and in part on its conclusion that the hotel had failed to "preserve [its] affirmative defense[] that McDowell was a cause of Dorsey's injuries." *McDowell*, 2022 WL 2916675, at *3. McDowell's motion sought to alter the judgment, raising several reasons why his recovery should not have been reduced by 80 percent. The court rejected all of McDowell's arguments and denied his Rule 59 motion. The hotel also moved to dismiss Dorsey's award for future non-economic damages, arguing that there was no evidence in the record to support it. The court agreed and granted the Rule 50 motion. And over the plaintiffs' objection, the court also awarded the hotel Rule 37 sanctions for plaintiffs' failure to timely disclose an expert's report. Each party appeals the district court's respective adverse rulings.

II.

We review Rule 50 motions for judgment as a matter of law de novo. *Rhinehimer v. U.S. Bancorp Invs., Inc.*, 787 F.3d 797, 804 (6th Cir. 2015). When sitting in diversity, we "use the standards for a judgment as a matter of law applicable under the law of the forum state." *Ventas, Inc. v. HCP, Inc.*, 647 F.3d 291, 319 (6th Cir. 2011) (quotation omitted). We review the district court's ruling on the parties' Rule 59 motions to alter or amend judgment for an abuse of discretion and claims of legal error de novo. *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 811 (6th Cir. 2020).

A.

The hotel argues that the district court made a "clear error of law" justifying relief under Federal Rule of Civil Procedure 59(e). Specifically, the hotel claims that faulty verdict forms permitted the jury to hold the hotel liable for more than its jury-determined pro rata share of fault against Dorsey. By way of relief, the hotel seeks an amended judgment, reducing Dorsey's award by 80 percent.

Under Michigan's "fair share liability" scheme, tort liability is to be allocated by the trier of fact in direct proportion to the person's percentage of fault regardless of whether the person is, or could have been, named as a party to the action. Mich. Comp. Laws § 600.2957(1). For tort actions involving the fault of more than one person:

> (1) . . . the court, unless otherwise agreed by all parties to the action, shall instruct the jury to answer special interrogatories . . . indicating both of the following:
>
> (a) The total amount of each plaintiff's damages
>
> (b) The percentage of the total fault of all persons that contributed to the death or injury, including each plaintiff and each person released from liability under section 2925d, regardless of whether the person was or could have been named as a party to the action.

Mich. Comp. Laws § 600.6304. "Except [for medical malpractice claims], a person shall not be required to pay damages in an amount greater than his or her percentage of fault as found under subsection (1)." *Id.* § 600.6304(4).

Michigan courts, however, have imposed a limitation on which persons a jury may allocate fault to, establishing that "before fault may be allocated to that person under the comparative-fault statutes, there must be proof that the person owed a legal duty to the injured party." *Est. of Goodwin by Goodwin v. Nw. Mich. Fair Ass'n*, 923 N.W.2d 894, 907 (Mich. Ct. App. 2018) (citing *Romain v. Frankenmuth Mut. Ins. Co.*, 762 N.W.2d 911, 913 (Mich. 2009)). That's because "[w]ithout owing a duty to the injured party, the 'negligent' actor could not have proximately caused the injury and could not be at 'fault' for purposes of the comparative fault statutes." *Id.*; *see also* Mich. Comp. Laws § 600.6304(8) (defining "fault").

During trial, the parties contested the content and structure of the verdict form. The hotel wanted a verdict form for each plaintiff that would have allowed the jury to allocate fault among the hotel, McDowell, and Dorsey. During off-record arguments before the court, the hotel "predicted a scenario where the jury could find comparative negligence against McDowell but not [against] Dorsey[,] and if the two Plaintiffs were not included on each other's[] verdict forms, defendants would have to take on McDowell's negligence as their own." The court subsequently acknowledged this exchange on the record. Plaintiffs, on the other hand, "objected to any language that reduced one plaintiff's recovery by the negligence of the other plaintiff." The court ultimately sided with plaintiffs, offering two reasons. In its written order, the court expressed its understanding that Mich. Comp. Laws § 600.2957(1) spoke only to "the question of whether each plaintiff was comparatively negligent for his own injuries" *not* to the question of whether "one plaintiff is liable for the injuries of the other plaintiff." And, in response to defendants' objections,

the court explained its view that defendants had not, in any event, adequately presented a theory of the case "say[ing] that the negligence of one [plaintiff] caused the injury of the other one." The court ordered that there would be two verdict forms—one for each plaintiff—and that "each form must refer only to the comparative negligence of that Plaintiff."

While the jury was deliberating, it sent a question to the court that said: "[W]e feel the hotel has the same amount of negligence overall. If we assume negligence from one plaintiff, then would we add that plaintiff's negligence to the hotel for the other plaintiff?" The court answered "yes." On McDowell's verdict form, the jury found that both McDowell and the hotel were negligent. The jury determined that McDowell was 80 percent at fault for his own injuries, while the hotel was only 20 percent at fault. On Dorsey's verdict form, the jury found that Dorsey was not negligent and found that the hotel was 100 percent at fault for Dorsey's injuries, despite the jury's question indicating its apparent belief that the hotel "ha[d] the same amount of negligence overall" as to the two plaintiffs.

After trial, the hotel moved to alter or amend the judgment under Rule 59, arguing that it should have to pay for only 20 percent of Dorsey's damages given the jury's apparent finding that the hotel "ha[d] the same amount of negligence overall"—presumably 20 percent. The court denied the hotel's motion. The court again explained its view that "Michigan's comparative fault scheme" mandates reduction of "a plaintiff's damages by the [percentage of] his own fault" but "does not require reduction of an innocent plaintiff's damages based on the comparative fault of a co-plaintiff." *McDowell*, 2022 WL 2916675, at *3. So "Dorsey's recovery can be reduced only by his own comparative negligence." *Id.* at *4. Alternatively, the court held that, even if the hotel *could have* reduced its liability to Dorsey based on McDowell's negligence, the hotel had failed

"to follow proper procedure, propose proper instructions, and preserve [its] affirmative defenses that McDowell was a cause of Dorsey's injuries." *Id.* at *3.

The district court's ruling that Michigan law would not have permitted the hotel to reduce its liability to Dorsey based on McDowell's negligence was in error. Section 600.2957(1) directs the trier of fact to consider the fault of each involved person, regardless of whether the person was named as a party to the action. Facially, this includes co-plaintiffs. And if there were any doubt, § 600.2957(1) cross-references § 600.6304, which directs the court to instruct the jury to make a finding on the percentage of the "total fault of all persons that contributed to the death or injury, including each plaintiff." There is no statutory carveout barring the jury from allocating fault to co-plaintiffs.

The district court also erred to the extent that it suggested that the hotel needed to file a counterclaim against McDowell to reduce its liability to Dorsey. The Michigan Court of Appeals has concluded that, post-tort reform, there is "no basis for a claim of contribution" because "a defendant cannot be held liable for damages beyond the defendant's pro-rata share." *Kokx v. Bylenga*, 617 N.W.2d 368, 372 (Mich. Ct. App. 2000). And as that court recently explained, the allocation of fault under § 600.2957 and § 600.6304 does not depend on a plaintiff's ability to recover from the person to whom the jury allocates fault. *See Est. of Goodwin*, 923 N.W.2d at 909 (holding that a child's "inability to recover damages against a parent in no way precludes an assessment of a parent's fault for purposes of accurately determining a defendant's liability and ensuring that a defendant only pays his or her fair share"). So the hotel's ability to ask the jury to consider McDowell's negligence toward Dorsey should not have depended on whether either the hotel or Dorsey filed a claim against McDowell. The district court misunderstood Michigan's "fair share" liability scheme.

We cannot so quickly dismiss the district court's alternative holding, however. The district court concluded that, even if the hotel had the correct view of Michigan law, the hotel had "failed to follow proper procedure, propose proper instructions, and preserve [its] affirmative defenses that McDowell was a cause of Dorsey's injuries." *McDowell*, 2022 WL 2916675, at *3. The court noted that the hotel failed to raise this defense "in various iterations of draft Joint Final Pretrial Orders submitted and the final one entered by the Court." *Id.* Instead, the hotel had resurrected the defense "at the eleventh hour and with no supporting instructions." *Id.* The court said that the hotel "abysmally failed" to propose the adequate jury instructions that would have allowed the jury to find that McDowell owed a duty to Dorsey and was a proximate cause of Dorsey's injuries. *Id.* at *3–6 ("Jury instructions regarding duty, breach, and liability between co-plaintiffs were not requested by Defendants, and they were necessary for the jury to allocate liability to McDowell as the proximate cause of Dorsey's injuries."). The court determined that the one comparative negligence jury instruction the hotel *did* request was "insufficient to guide the jury because Defendants did not request instructions concerning: (1) any duty McDowell may have owed Dorsey; (2) what conduct on the part of McDowell breached any duty he may have owed Dorsey; or (3) how the jury could allocate McDowell's fault if it believed he caused some or all of Dorsey's harm." *Id.* at *3. And while the court acknowledged that the hotel proposed a *verdict form* that would have allowed the jury to attribute fault to McDowell for Dorsey's injuries, it ruled that the verdict form was not sufficient without supporting instructions. Finally, the court found that the jury's questions during deliberations "did not operate as a proximate cause finding or an allocation of fault to McDowell for Dorsey's injuries." *Id.* at *4.

The district court also noted several deficiencies in the verdict forms that the hotel proposed to the district court. For one thing, the verdict form the hotel proposed for Dorsey would not have

allowed the jury to allocate fault to McDowell. Question 8 of the proposed verdict form asked the jury to enter the percentage of negligence attributable to the hotel and to Dorsey but did not include a line where the jury could have attributed fault to McDowell. Second, the hotel included language in both proposed verdict forms that said: "Please note that the judge will reduce the total amount of Plaintiff Raymond McDowell['s] damages for noneconomic loss by the percentage of the negligence attributable to Plaintiff Raymond McDowell and Taj Dorsey, if any." This language suggests that the hotel asked the court to reduce the plaintiffs' noneconomic damages based on their *combined* negligence, regardless of the percentage of fault the jury attributed to each plaintiff separately. This too is contrary to Michigan's fair share liability scheme, which is designed so the finder of fact can assess damages and apportion liability for each plaintiff individually. *See* § 600.6304 (instructing that the jury shall make findings on the total amount of *each* plaintiff's damages and the percentage of total fault of all persons that contributed to the death or injury, including *each* plaintiff). And the parties agreed to instruct the jury that "[e]ach plaintiff is entitled to separate consideration of his own case." *McDowell*, 2022 WL 2916675, at *5.

We cannot say that the district court abused its discretion in denying the hotel's Rule 59 motion. The district court determined that the hotel did not preserve its defense that McDowell caused Dorsey's injuries and failed to request the appropriate verdict form and accompanying jury instructions that would have allowed the jury to find that McDowell's negligence was a proximate cause of Dorsey's injuries. *See Lamp v. Reynolds*, 645 N.W.2d 311, 319 (Mich. Ct. App. 2002). The hotel's only response is that "while the District Court denied Defendants' post-judgment motion in part because the necessary jury instructions were not given, that was only because the District Court had previously—and erroneously—rejected Defendants' interpretation of the comparative fault scheme." But the hotel never requested the requisite jury instructions even

*before* the court had "rejected Defendants' interpretation of the comparative fault scheme." None of the various iterations of the jury instructions the hotel requested contained language that would have facilitated a jury finding that McDowell breached a duty he owed to Dorsey and proximately caused Dorsey's injuries. That includes the hotel's first set of proposed instructions—submitted long before the district court initially misinterpreted the comparative fault statutes and denied the hotel's proposed verdict form. The only duties the hotel's proposed jury instructions covered were the duty of each plaintiff to use ordinary care for *his own* safety and the safety of his property and the duty the hotel owed plaintiffs. No version of the instructions ever mentioned any duty McDowell may have owed to Dorsey.

The district court reasonably concluded that the hotel failed to properly preserve and present its theory that McDowell breached a duty to Dorsey that contributed to his injuries. The court therefore did not abuse its discretion by denying the hotel's motion.

B.

On cross-appeal, McDowell argues that the district court erred by denying his post-trial motion to alter or amend the judgment under Federal Rules of Procedure 59 and 60. McDowell contends that his damages should not have been reduced by 80 percent. He offers three reasons why the reduction was error.

First, McDowell argues that his damages should not have been reduced because the hotel did not plead comparative negligence as an affirmative defense.

Rule 8(c) of the Federal Rules of Civil Procedure requires parties to state any affirmative defense they plan to raise in response to a pleading. But our court has long held that the "failure to raise an affirmative defense by responsive pleading does not always result in waiver." *See, e.g.*, *Brent v. Wayne Cnty. Dep't of Hum. Servs.*, 901 F.3d 656, 680 (6th Cir. 2018) (quoting *Moore*,

*Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1445 (6th Cir. 1993), *as amended on denial of reh'g* (Aug. 31, 1993)). That's because the purpose of Rule 8(c) is to "give the opposing party notice of the affirmative defense and a chance to rebut it." *Id.* If a plaintiff receives notice of the defense by some other means, the defendant's failure to comply with Rule 8(c) does not prejudice the plaintiff. *Id.* Absent prejudice, a district court does not abuse its discretion by permitting the defense. *See Rogers v. I.R.S.*, 822 F.3d 854, 857 (6th Cir. 2016).

In its answer to plaintiffs' complaint, the hotel alleged that "[t]he negligence, gross negligence, and/or willful or wanton misconduct *of the Plaintiffs* and/or others not including these Defendants acted as an intervening cause sufficient to bar any claim against these Defendants." So while McDowell is right that the hotel did not use the label "comparative negligence," its pleading did provide notice that McDowell's negligence would be a key component of its defense, which in turn should have allowed plaintiffs to "conduct discovery, file pretrial motions, and otherwise prepare for such a defense at trial." Even if the hotel's answer didn't place McDowell on notice that the hotel would assert McDowell's comparative negligence as a defense, the parties' substantial pretrial discussions over the verdict forms did. Therefore, the court did not abuse its discretion in denying McDowell's Rule 59 motion on this ground.

Second, McDowell argues that the district court improperly interposed sua sponte the theory that McDowell was comparatively negligent by breaching a duty he owed to himself. But the district court did not raise this theory sua sponte. This was the very theory of negligence that the verdict form and accompanying instructions asked the jury to evaluate. The verdict form expressly directed the jury to determine whether McDowell was negligent and whether his negligence was a proximate cause of his own injuries. The accompanying instructions defined negligence as "the failure to use ordinary care." The next page of the instructions clearly

stated: "It was the duty of the plaintiff, in connection with this occurrence, to use ordinary care for his own safety and the safety of his property." As the district court found, these instructions "informed the jury that McDowell owed a duty of ordinary care to himself." *McDowell*, 2022 WL 2916675, at *8.

McDowell characterizes the district court's order as raising a novel argument when, in fact, the court was attempting to refocus the parties on the theory of McDowell's comparative negligence that the jury actually decided—whether McDowell's negligence was a proximate cause of his own injuries—and *away* from the theory of negligence that the jury did *not* decide—whether McDowell's negligence was a proximate cause of *Dorsey's* injuries. As McDowell acknowledges in his brief, a Rule 59(e) motion cannot be used to argue a new legal theory. By refocusing the parties on whether McDowell's comparative negligence was a proximate cause of his own injuries, the district court was merely trying to give effect to this rule, not interject "a novel and previously unasserted legal issue."

Third, McDowell argues that the court improperly allowed the jury to reduce his damages because there is no duty to protect against unforeseeable criminal conduct of a third-party. But that is not an accurate statement of Michigan law.

Under Michigan law, there is no *general* duty to anticipate and prevent criminal activity. *See, e.g.*, *Graves v. Warner Bros.*, 656 N.W.2d 195, 202 (Mich. Ct. App. 2002). Michigan law, however, recognizes that criminal acts of third parties *can* be foreseeable in some situations. *See Dawe v. Bar-Levav & Assocs.*, 808 N.W.2d 240, 249 (Mich. Ct. App. 2010) ("Courts in Michigan have long recognized that criminal acts by third parties can be foreseeable."); *MacDonald v. PKT Inc.*, 628 N.W.2d 33, 40–41 (Mich. 2001) (holding that criminal activity can be foreseeable when "specific acts occur[] . . . that pose a risk of imminent and foreseeable harm to an identifiable"

individual). For instance, a person can be negligent and held liable for the theft of a borrowed car when he fails to lock the car in a high-crime area and leaves the keys in the ignition with the motor running. *See Davis v. Thornton*, 180 N.W.2d 11, 15 (Mich. 1970). Whether the risk of harm from third-party criminal activity is foreseeable is generally a question of fact for the jury. *See MacDonald*, 628 N.W.2d at 41; *Holland v. Liedel*, 494 N.W.2d 772, 774 (Mich. Ct. App. 1992).

The district court denied McDowell's motion because it found that "[t]he record contains sufficient evidence to raise a question of fact regarding the foreseeability of Fowler-Mitchell's crimes and the reasonableness of McDowell's actions." *McDowell*, 2022 WL 2916675, at *9. The court identified specific facts that could have supported the jury's conclusion that McDowell was comparatively negligent: the fact that McDowell did not run a background check on Fowler-Mitchell after hiring him off Craigslist, that McDowell invited Fowler-Mitchell inside his motel room and displayed a large amount of cash in front of him, and that McDowell did not call the police, seek help, or otherwise take action after Fowler-Mitchell called him three times, and pounded on his door in the middle of the night with strangers flanking him.

McDowell counters that he was not comparatively negligent because there is not a "scintilla of evidence" that he had prior knowledge of Fowler-Mitchell's propensity to engage in criminal activity. But while this lack of knowledge may have been *one* relevant consideration the jury could have weighed, it was not the *only* one. Ultimately, the foreseeability of Fowler-Mitchell's criminal conduct and whether McDowell exercised due care under the circumstances were questions for the jury. *See Rodis v. Herman Kiefer Hosp.*, 370 N.W.2d 18, 20 (Mich. Ct. App. 1985). The district court did not abuse its discretion in determining that there was no clear error of law or fact that would warrant overriding the jury's decision to reduce McDowell's damages as a result of his comparative negligence.

C.

Dorsey appeals the district court's decision to grant the hotel's Rule 50(b) motion to dismiss Dorsey's award for future non-economic damages.

At trial, the hotel argued that the plaintiffs had presented no evidence of their life expectancies and thus that the court should not permit the plaintiffs to seek future non-economic damages under Michigan law. To be "fair and equitable" on this damages issue, the district court chose to limit the plaintiffs' ability to seek future non-economic damages to three years. The jury awarded Dorsey $36,000 in future non-economic damages—$12,000 per year for the three years. After trial, the hotel challenged this award, renewing its argument that no evidence in the record supported it. The district court agreed that its earlier ruling was in error. The court explained that "[w]ithout testimony as to life expectancy or judicial notice of Dorsey's life expectancy, the jury was left to speculate as to whether Dorsey would experience symptoms in the future and how long he would live." *McDowell*, 2022 WL 2916675, at *14. We affirm the district court's order given the "complete absence of proof" regarding Dorsey's life expectancy. *See Karam v. Sagemark Consulting, Inc.*, 383 F.3d 421, 427 (6th Cir. 2004).

In Michigan, "[a] plaintiff must prove damages with reasonable certainty; speculative damages, or those based on conjecture, are not generally recoverable." *Vehicle Dev. Corp. PTY Ltd. v. Livernois Vehicle Dev., L.L.C.*, 995 F. Supp. 2d 758, 773 (E.D. Mich. 2014) (applying Michigan law); *see also Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 706 N.W.2d 843, 852 (Mich. Ct. App. 2005); *Kubicek v. J. Walter Thompson U.S.A., Inc.*, 902 F.2d 33, at *5 (6th Cir. 1990) (Table). The jury must make specific findings on the future damages the plaintiff is likely to suffer for each future year they award damages for, as opposed to a lump sum.

*See* Mich. Comp. Laws § 600.6305(1)(b). Thus, a non-speculative award of future lifetime damages necessarily requires the jury to determine the plaintiff's life expectancy.

Here, there was no evidence at trial to establish Dorsey's life expectancy. The plaintiffs withdrew one of their expert witnesses, and the district court struck the other expert witness who was slated to testify to Dorsey's life expectancy and future damages. And the plaintiffs made a strategic decision to withdraw their motion to take judicial notice of life expectancy tables because that would have opened the door to admitting evidence about the plaintiffs' alleged drug and alcohol use and prior convictions.

To be sure, the district court limited future non-economic damages to three years, and it might not take much to convince a reasonable juror that the average person in his forties will live for that short period. But the district court seemed to arbitrarily pick this three-year number without any basis in the evidence or Michigan law. Regardless, Dorsey has not claimed on appeal (as he argued below) that the jury could use its "experience with everyday life" in deciding how long a person would live.

Instead, Dorsey argues only that no evidence of life expectancy was needed because of the legal presumption that a missing person is dead after an absence of five continuous years during which he or she has not been heard from. But Dorsey cannot merely point to an abstract legal presumption from Michigan's estate code to make the requisite showing that it was *reasonably certain* that Dorsey would sustain future non-economic damages for a certain period. *See Kubicek*, 902 F.2d at *5 (citing *Clissold v. St. Louis–San Francisco Ry. Co.*, 600 F.2d 35, 39 (6th Cir. 1979) (holding that damages for future consequences of an injury are recoverable only if there is "such a degree of probability of such consequences as to amount to [a] reasonable certainty that they will

result")). Without *any* evidence of Dorsey's life expectancy, the jury's award was mere conjecture. *Id.* Dorsey's motion fails.

### D.

Finally, plaintiffs argue that the district court erred by awarding the hotel $17,105 in Rule 37 discovery sanctions for plaintiffs' failure to timely disclose the report of their economic expert witness, Barry Grant. That report concluded that plaintiffs would sustain $6 million in present and future lost wages.[1]

We review the court's decision to impose Rule 37 sanctions for an abuse of discretion. *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 218 (6th Cir. 2019); *McCarthy v. Ameritech Pub., Inc.*, 763 F.3d 488, 490 (6th Cir. 2014). An abuse of discretion occurs when the court relies on clearly erroneous findings of fact, improperly applies the law, or uses an erroneous legal standard. *Bisig*, 940 F.3d at 218. To reverse the sanctions order, we must be left with a "definite and firm conviction that the trial court committed a clear error of judgment." *Id.* We hold that the district court acted within its discretion in imposing sanctions.

Rule 37(c)(1)(A) permits a court to order payment of the reasonable expenses caused by a party's failure to timely disclose expert witness materials. Here, expert disclosures were due on September 18, 2020, but the plaintiffs did not disclose Grant's expert report until February 14, 2022, mere days before trial was to begin. The trial date was later postponed to March 22, 2022.

Upon the plaintiffs' untimely disclosure, the hotel moved to strike Grant as an expert witness, along with his expert report. While its motion to strike was pending, the hotel deposed Grant on March 17, because trial was set to begin a few days later. Then, on March 18, at a pretrial

---

[1]We granted plaintiffs' motion to raise this argument in a corrected second brief over the hotel's objection. *See* Doc. 32.

conference, plaintiffs agreed not to call Grant as a witness because they decided to waive their request for future economic damages. In a pretrial order, the district court ordered plaintiffs' counsel to pay the hotel's reasonable expenses, including attorney's fees, caused by their failure to timely disclose Grant's expert report.

The district court rejected plaintiffs' argument that their untimely disclosure was harmless because the hotel would have expended the same amount regardless of when the report was disclosed. Specifically, the district court found that Grant's report "led Defendants into a fren[z]y trying to adequately prepare for and complete Grant's deposition a month before trial" and that the "late disclosure caused them to spend more time and money on the process of researching the law and facts regarding Plaintiffs' work history; researching and drafting the motion to strike; reviewing and fact checking Plaintiffs' expert's files and reports, which totaled closed to 1,000 pages; and preparing for and completing Grant's six-hour discovery deposition." *McDowell*, 2022 WL 2916675, at *19. The court found that the late disclosure "made the matter much more urgent, time consuming, and expensive as trial loomed less than a month away." *Id.* The court found that all the fees the hotel requested were caused by plaintiffs' failure to timely disclose the expert report. The court further held that the expenses defendants requested were reasonable, relying on the familiar "lodestar" approach, under which a court multiplies the reasonable number of hours billed by a reasonable billing rate prevailing in the community for similar services by lawyers of reasonably comparable skill and experience. *Id.* (citing *Disabled Patriots of Am., Inc. v. Taylor Inn Enters., Inc.*, 424 F. Supp. 2d 962, 965 (E.D. Mich. 2006); *Fuhr v. Sch. Dist. of Hazel Park*, 364 F.3d 753, 762 (6th Cir. 2004)).

The district court's finding that the hotel's expenses were directly tied to the plaintiffs' untimely disclosure was well reasoned and grounded in the record. It was not clearly erroneous.

*See Jackson by Jackson v. Nissan Motor Corp.*, 888 F.2d 1391, at \*5 (6th Cir. 1989) (per curiam); *see also First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 517 n.13 (6th Cir. 2002).

Plaintiffs argue that they disclosed Grant's report as soon as they received it and that they could not have produced the testimony any earlier. But plaintiffs offer no reason why they did not request the report from their expert sooner to comply with the court's deadline and their obligation under Rule 26(a)(2)(b). The plaintiffs had years between the time they designated Grant as an expert witness and the start of trial to follow up with Grant to obtain the report he planned to use to support his testimony at trial. *Cf. Howe v. City of Akron*, 801 F.3d 718, 749–50 (6th Cir. 2015) (holding that the plaintiffs' late disclosure was understandable because it was the result of a discovery period that was a "rushed, confusing nightmare" and because the district court caused many of the problems that led to the late disclosure). The remainder of plaintiffs' arguments concerning the secret motives of the trial court for assessing sanctions are too speculative to warrant relief.

\* \* \*

We AFFIRM.